In re FRANKLIN NATIONAL BANK
SECURITIES LITIGATION.

Robert GOLD, on behalf of himself and
on behalf of all others similarly
situated, Plaintiff-Appellant,

and

Louis Pergament,
Intervenor-Plaintiff-Appellant,

v.

ERNST & ERNST, Harold V. Gleason,
Paul Luftig, Peter R. Shaddick, Michele
Sindona, Carlo Bordoni, Howard D.
Crosse, Andrew N. Garofalo, Donald H.
Emrich, and Robert C. Panepinto, De-
fendants-Appellees.

No. 960, Docket 76–7616.

United States Court of Appeals,
Second Circuit.

Argued April 27, 1977.

Reargued Nov. 15, 1977.

Decided April 3, 1978.

Melvyn I. Weiss, New York City, N.Y. (David J. Bershad, Jared Specthrie, Jerome M. Congress, and Milberg, Weiss, Bershad & Specthrie, Liaison Attorneys for Class Action Plaintiffs and Attorneys for plaintiff-appellant Robert Gold, New York City, and Jessel Rothman, Mineola, N.Y., Attorney for intervenor-plaintiff-appellant Louis Pergament, on the brief), for plaintiff-appellant.

Barbara A. Lee, New York City, N.Y. (Justin N. Feldman and Poletti, Freidin, Prashker, Feldman & Gartner, New York City, for defendant-appellee Howard D. Crosse; Davis, Polk & Wardwell, New York City, for defendant-appellee Ernst & Ernst; Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for defendant-appellee Harold V. Gleason; Battle, Fowler, Lidstone, Jaffin, Pierce & Kheel, New York City, for defendant-appellee Paul Luftig; Anderson, Russell, Kill & Olick, P. C., New York City, for defendant-appellee Peter R. Shaddick; Mudge, Rose, Guthrie & Alexander, New York City, for defendant-appellee Michele Sindona; DiFalco, Field & Lomenzo, New York City, for defendant-appellee Carlo Bordoni; and Pirrotti & Imperato, Brooklyn, N Y., for defendant-appellee Robert C. Panepinto, Brooklyn, New York, on the brief), for defendant-appellee Howard D. Crosse.

Robert P. Stein, New York City, N.Y. (Alvin K. Hellerstein, and Stroock & Stroock & Lavan, Richard O. Scribner, Senior Vice-President and Gen. Counsel for Securities Industry Ass'n, Michael D. Udoff, Robert P. Bramnik, Aaron Teitelbaum, Matthew Farley, New York City, Attorneys for Securities Industry Ass'n and Twenty-five Broker-Dealers, as amici curiae, New York, N.Y., on the brief), for amici curiae.

Before MEDINA and OAKES, Circuit Judges, and MISHLER, District Judge.*

MEDINA, Circuit Judge:

This class action appeal[1] was first argued before the present panel of judges of this Court on April 27, 1977. Plaintiff, who purchased 300 shares of common stock of Franklin New York Corporation on the over-the-counter market in New York City on May 9, 1974, seeks a recovery of money damages for an alleged security fraud against the independent accountants and certain former officers, directors, and employees of Franklin New York Corporation

---

* Chief Judge, Eastern District of New York, sitting by designation.

1. No questions have been raised by any of the parties to this appeal relative to our jurisdiction to decide the questions and make the rulings contained in this opinion. All agree that the trial court properly certified the class as defined by plaintiff. The other questions are properly before us as of the limited group of situations covered by *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), as defined in *Eisen IV, Eisen v. Carlisle & Jacquelin, et al.*, 417 U.S. 156, 170–172, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). In addition there was the usual certification by the trial judge authorized by 28 U.S.C. Section 1292(b). *In re Franklin National Bank Securities Litigation*, 73 F.R.D. 25, 28 (E.D.N.Y.1976). And the appeal was authorized by this Court by order dated February 2, 1977, inadvertently omitted from the Joint Appendix.

and Franklin National Bank. The class is described as "purchasers of common stock, preferred stock or capital notes of Franklin New York Corporation between July 16, 1973 and May 16, 1974."

The record discloses that many purchases had been recorded in "street names."[2] This appeal is from orders of Judge Thomas C. Platt, Jr., dated October 27, 1976 and November 30, 1976, *In re Franklin National Bank Securities Litigation*, 73 F.R.D. 25 (E.D.N.Y.1976), in which he: (1) certified the class as defined by plaintiff; (2) held that the cost of the search of records and the use of computers necessary to the compilation of a list containing the names and addresses of the beneficial owners was part of the plaintiff's burden in maintaining the action (apparently assuming that notice was required to be sent to the beneficial owners where the securities were held in "street names"); and (3) refused to order the brokerage houses and banks to prepare such lists at their own cost and without reimbursement from the class representatives. The upshot was orders requiring plaintiff to pay for giving notices by mail to the "street names" with the direction to forward the notices to the beneficial owners, and to ascertain the names and addresses of the beneficial owners and mail notices to them also. This was deemed to be a proper compliance with the mandate of Federal Rule 23 that individual notice be given to all the members of the class who could be identi-

fied with reasonable effort. No brokerage house or bank is a party to this class action.

It appeared on the first oral argument that what seemed to be a similar case, *Sanders v. Levy*, was *sub judice* before this Court, sitting *en banc*, and that no decision had yet been forthcoming. So we decided to hold the appeal in abeyance until the opinion or opinions in the *Sanders* case were filed. The majority and dissenting opinions in *Sanders* were filed on June 22, 1977. (*Sanders v. Levy*, 558 F.2d 636 (2d Cir. 1977) (*en banc*).) Also, since the oral argument on April 27, 1977, opinions were filed in related cases, involving "street names" or other so-called "absentee" owners, by the Third and Fifth Circuits in *In re Nissan Motor Corporation Antitrust Litigation*, 552 F.2d 1088 (5th Cir. 1977), and *In Re: Penn Central Securities Litigation*, 560 F.2d 1138 (3d Cir. 1977). Accordingly, we asked the parties to file supplemental briefs, and we set the case down for a second oral argument on November 15, 1977. The Supreme Court has granted certiorari in *Sanders sub nom. Oppenheimer Fund, Inc. v. Sanders*, 434 U.S. 919, 98 S.Ct. 391, 54 L.Ed.2d 275 (1977).

The net result is that we vacate the stay and the orders appealed from, agree with the trial judge's certification of the class as defined by plaintiff, and otherwise remand the case. We retain jurisdiction, as we did in *Eisen II*, 391 F.2d at page 570.[3]

---

**2.** The term "street name" or "nominee name" refers to the practice of registering securities in other than the name of the beneficial owner. The device is used most frequently by banks or brokerage firms as owners of record on behalf of individual or institutional investors. *See* Securities and Exchange Commission, *Final Report to Congress on The Practice of Recording the Ownership of Securities in the Records of the Issuer in Other Than the Name of the Beneficial Owner of Such Securities [Street Name Study: Final Report]* (Dec. 3, 1976), Fed.Sec.L. Rep. (CCH) No. 672 (1976), at p. 1 and Securities and Exchange Commission, *Preliminary Report of December 4, 1975 on The Practice of Recording the Ownership of Securities in the Records of the Issuer in Other Than the Name of the Beneficial Owner of Such Securities [Street Name Study: Preliminary Report]* (Dec. 4, 1975), Fed.Sec.L.Rep. (CCH) No. 619 (1975), at pp. 1–2. A principal purpose of such regis-

tration is to facilitate transfer of the securities. *See* Part Three, A., *infra*.

**3.** For purposes of reference we summarize below all the *Eisen* opinions in chronological sequence:

(1) *Eisen v. Carlisle & Jacquelin, et al.*, 41 F.R.D. 147 (S.D.N.Y.1966). Class action dismissed by District Judge Harold R. Tyler, Jr.

(2) *Eisen I: Eisen v. Carlisle & Jacquelin, et al.*, 370 F.2d 119 (2d Cir. 1966), *cert. denied*, 386 U.S. 1035, 87 S.Ct. 1487, 18 L.Ed.2d 598 (1967). Motion to dismiss appeal from Judge Tyler's dismissal of the class action denied. The "Death Knell" ruling.

(3) *Eisen II: Eisen v. Carlisle & Jacquelin, et al.*, 391 F.2d 555 (2d Cir. 1968). Dismissal reversed. Case remanded for hearing and further consideration. Jurisdiction retained.

As the scope of this opinion covers a wide field of complex and interlocking legal issues, all arising out of the use of "street names" in the context of a securities fraud class action governed by Federal Rule 23, as revised in 1966, we have thought it more conducive to clarity and the elimination of much of the confusion in the existing case law on the subject to avoid preliminaries and to proceed at once with our disposition of these legal issues. Thus, we have divided this opinion into three sections: Part One, relating to our formulation of the principles governing *The Basic Issues;* Part Two, an *Intermediate Summary and Commentary*; and Part Three, a brief historical sketch of how the "street names" practice expanded to help meet the so-called "paperwork crisis" in the securities industry, during the years 1967–1970 and a statement of suggested procedures to be followed according to the discretion of the trial judge in the management of the case.

## PART ONE.

### The Basic Issues.

#### A.

*The District Court Had No Jurisdiction to Enter a Judgment Requiring the Brokerage Houses to Defray the Expense of Compiling a List of the Names and Addresses of the Beneficial Owners as None of the Brokerage Houses is a Party to This Action.*

■ It is difficult to imagine a principle of jurisprudence more fundamental than that requiring that no judgment be rendered against any person without giving that person notice of the claim made against him and an opportunity to be heard. And yet, when it comes to saving cash outlay by class representatives and putting this burden on the brokerage houses, judge after judge has apparently felt no hesitancy in making such orders, despite the fact that the brokerage houses were not parties to the class actions.

The briefs before us contain numerous references to the fact that in *Jahre v. Joseph M. Rait, Proflex Limited and Pelorex Corp.*, No. 74 Civ. 805 (E.D.N.Y. May 19, 1976), a class action, Judge Jack B. Weinstein, of the Eastern District, made an *ex parte* order in which he

ORDERED, that any bank, brokerage firm or other nominee which purchased the common stock of Pelorex Corp. for the account of others (beneficial owners) shall immediately transmit to each beneficial owner a copy of the Stipulation of Settlement, Notice to class members and Proof of Claim and request reimbursement for mailing costs, or supply the names and addresses of such beneficial owners to Defendants' counsel, without cost.

We do not know what representations were made to Judge Weinstein before he signed that order. But the twelve brokerage houses involved started a special proceeding in which they sought to have the order vacated on the ground that none of them was a party to the class action and that the court had no jurisdiction to make the order. The record on file in the office of the Clerk of the District Court for the Eastern District of New York discloses the

(4) Judge Tyler's opinions on the remand and prior to the second appeal to the Court of Appeals for the Second Circuit:

(a) *Eisen v. Carlisle & Jacquelin, et al.*, 50 F.R.D. 471 (S.D.N.Y.1970).

(b) *Eisen v. Carlisle & Jacquelin, et al.*, 52 F.R.D. 253 (S.D.N.Y.1971).

(c) *Eisen v. Carlisle & Jacquelin, et al.*, 54 F.R.D. 565 (S.D.N.Y.1972).

(5) *Eisen III: Eisen v. Carlisle & Jacquelin, et al.*, 479 F.2d 1005 (2d Cir. 1973). District Court rulings reversed and class action dismissed.

(6) *Eisen IV: Eisen v. Carlisle & Jacquelin, et al.*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Rulings below on mini-trial and obligation of class representatives to pay for giving notice to class members who could be identified with reasonable effort approved, and judgment vacated and class action remanded "without prejudice to any efforts petitioner may make to redefine his class under Rule 23(c)(4) or Fed.Rule Civ.Proc. 15," 417 U.S. at 179, n.16, 94 S.Ct. at 2153. The effort to divide the class of 6,000,000 members into sub-classes did not succeed.

*Eisen III* was not "reversed" by *Eisen IV*, as inadvertently stated in *Parkinson v. April Industries, Inc.*, 520 F.2d 650, 656, *et passim* (2d Cir. 1975).

following summary of petitioners' argument:

The brokerage firms were not on notice, had no opportunity to be heard, were not parties, and hence not subject to the court's jurisdiction.

Judge Weinstein vacated the order without comment on October 15, 1976.

In connection with the huge class actions in *In Re: Penn Central Securities Litigation*, 416 F.Supp. 907 (E.D.Pa.1976), Judge Joseph H. Lord of the Eastern District of Pennsylvania on August 22, 1975 made similar *ex parte* orders directing fourteen named brokerage houses, none of which was a party to any of the class actions, to ascertain the names and addresses of the beneficial owners of stock held in "street names" and to mail the class action notices to them. In these orders it was provided that the brokerage houses would be reimbursed for "reasonable postage expenses incurred in connection with [the] mailing." In contrast to what occurred in *Jahre v. Rait*, these brokerage houses went ahead and performed the necessary research, and they produced a list, apparently containing the names and addresses of the beneficial owners whose purchases had been recorded in "street names." They also mailed the class notices to the persons and corporations on this list. When they sought reimbursement for the $24,106.03 they had spent doing what they had been ordered to do, Judge Lord denied their application, and even refused reimbursement for the "reasonable postage expenses incurred in connection with [the] mailing." He expressed the view that it was the individual beneficial owners, who had used "street names," rather than the class as a whole, who should pay. No explanation was given for the inconsistent rulings with respect to the postage. The Third Circuit in *In Re: Penn Central Securities Litigation*, 560 F.2d 1138 (3d Cir. 1977), *supra*, reversed this order and remanded the matter to the District Court with a direction to consider various alternative sources for reimbursement, including the large settlement fund of over eight million dollars, or the settling defendants.

The Third Circuit opinion makes no reference to the fact that, when made, Judge Lord's *ex parte* order was void for lack of personal jurisdiction over any of the brokerage houses directed to defray the expense of the research necessary to prepare the list of beneficial owners. But, as we must discuss Judge Lord's *ex parte* order with reference to the issues now before us, we see no alternative to stating, as we now do, that the *ex parte* order was wholly ineffectual, because the District Court in the Eastern District of Pennsylvania had no jurisdiction to make the order. Nor did this voluntary compliance constitute any submission by the brokerage houses to the jurisdiction of the District Court. The District Court had personal jurisdiction over the brokerage houses for the first time when the brokerage houses petitioned the District Court for reimbursement. In this way Judge Lord did have jurisdiction to deny the application for reimbursement and, in reversing this order denying reimbursement, the Third Circuit had no occasion to comment on the lack of personal jurisdiction to make the *ex parte* order on which this plaintiff relies. It is difficult for us to see how plaintiff here finds any comfort in this case.

B.

*Unlike Sanders, This Case Did Not Involve and Could Not Have Involved the Exercise of Any Discretion by the Trial Judge With Respect to the Question of Whether or Not the Brokerage Firms Were to Pay the Expense of Ascertaining the Names and Addresses of the Beneficial Owners of Stock Registered in "Street Names."*

We come now to the question whether the decision in *Sanders v. Levy*, 558 F.2d 636 (2d Cir. 1977) *(en banc), cert. granted sub nom. Oppenheimer Fund, Inc. v. Sanders*, 434 U.S. 919, 98 S.Ct. 391, 54 L.Ed.2d 275 (1977), *supra*, governs this case. We hold that it does not.

In *Sanders* there were two consolidated actions. The first was a class action to recover money damages for an alleged security fraud, and the second was a deriva-

tive action, the proceeds of which, if plaintiffs were successful, would go to the Oppenheimer Fund, Inc. In the class action the Fund was not named as a party, but, as required by law, the Fund was a party defendant in the second suit, the derivative action. Plaintiffs owned shares in the defendant Fund, an open-ended investment fund registered under the Investment Company Act of 1940, 15 U.S.C. §§ 80a–1 et seq. The other defendants were various corporations and individuals alleged to have participated in the failure to disclose material information to investors. The class consisted of all persons who purchased shares of the Fund between March 15, 1968 and April 24, 1970, including those persons who had sold their shares. The part of the case relevant to this present appeal concerns the question whether the class representatives or the defendants were obliged to pay the expense of compiling a list of the names and addresses of the past and present beneficial owners who constituted members of the class, so that the plaintiffs could then prepare the necessary notice required by Federal Rule 23 and mail it to the members of the class at plaintiffs' expense. District Judge Griesa ruled that the compilation of the list of the names and addresses, which involved culling these names and addresses from computer tapes, "is the responsibility of defendants." *Sanders v. Levy,* 20 Fed.R. Serv.2d 1218, 1222 (S.D.N.Y.1975). The record in the District Court does not reveal any discovery proceedings nor was the subject of discovery referred to.

On appeal a panel of this Court reversed the District Court and held that the specific question above referred to was one of notice under Rule 23 and that, as held by the Supreme Court in *Eisen IV,* 417 U.S. 156, at pages 177–179, 94 S.Ct. 2140 (1973), the cost of such notice must be borne in the first instance by the plaintiffs. Judge Hays dissented on two grounds, one of which was that the question was not one of notice under Rule 23 but of "class member identification costs," which Judge Hays said was governed by Federal Rule 34, applicable to computerized information. As Federal Rule 26 gives the District Court discretion-

ary power to shift the expense of discovery, Judge Hays stated that the District Court in *Sanders* had not abused its discretion in holding that the defendant Fund should bear the expense of culling the names and addresses of the members of the class.

On the *en banc* rehearing, the majority sustained the view expressed by Judge Hays, with Judges Mulligan, Van Graafeiland, and Meskill dissenting. The opinion by Judge Hays holds that the judgment of the District Court was affirmed: (1) because the question involved is not one of notice under Rule 23 but a question of discovery under Rules 26 and 34; and (2) because the District Court had not abused its discretion in directing defendants to bear the costs of identifying the class members.

We think that *Sanders* is not controlling, because Judge Platt made his ruling in the case now before us as matter of law, and that ruling was called for by the notice requirements of Rule 23. Rule 34, relied upon in *Sanders,* refers only to parties. Rule 34 is thus of no force or effect with reference to non-parties such as the brokerage houses in the case before us. Not only is it clear that Judge Platt ruled as matter of law and not in the exercise of discretion, but it is also clear that in no aspect of the record in the case before us did Judge Platt have any discretion to exercise, for the discovery rules applicable to non-parties, such as the bill in equity to compel discovery or the *subpoena duces tecum,* are not involved. Plaintiff here has not sought relief by means of either of these alternative routes.

This restriction of applicability to parties is not only clear on the face of Rule 34, which includes the reference to computers so strongly relied upon by the majority in *Sanders,* but the point is emphasized by the Reviser's Comment at the time of the 1970 amendments. It was then proposed that Rule 34 be changed so as to make it applicable to non-parties, such as the brokerage houses in the case before us. This proposal was rejected. It was decided that such a

change would introduce too many complex problems, both jurisdictional and procedural. *See* Fed.R.Civ.Pro. 34, Advisory Comm. Note, 48 F.R.D. 487, 527 (1969). It was further pointed out that there already existed discovery remedies vis-à-vis non-parties, such as the bill in equity for discovery that had existed almost from the time of the creation of the separate Court of Chancery in England, and the *subpoena duces tecum* pursuant to Federal Rule 45. *See* Part Three, *infra.* As discussed below, we are wholly at a loss to understand why plaintiff has not already used the *subpoena duces tecum* procedure against these brokerage houses and sought co-operation with them, instead of going to all the trouble and expense involved in the present appeal.

What makes this case distinguishable from *Sanders* is that there the Fund was a party in that case, and we cannot say that in its formulation of the principle controlling the decision of that case, the *en banc* court had no power to assume that Judge Griesa had exercised the discretion authorized by the discovery rules, in particular Rule 34. Here, the discovery rules applicable to non-parties plainly give plaintiff authority to probe for the information necessary to compile a list of the names and addresses of the beneficial owners either by filing a bill in equity for discovery or by asking the court to issue *subpoenas duces tecum* to each of the brokerage houses. *See* Part Three, *infra.* In the absence of such proceedings, however, there is no basis for the exercise of any discretion, imaginary or otherwise.

In *Sanders,* if the supposed discovery proceeding had been prosecuted, the computerized records of the Fund would definitely have revealed the names and addresses of the shareholders. Here, there is no means of knowing what the computerized or other records of the individual brokerage houses will show. Indeed, many of these brokerage houses may have merged or gone into bankruptcy, as was found to be so in one of the cases cited in the briefs. *Entin v. Barg,* 412 F.Supp. 508 (E.D.Pa.1976). Some records may have been lost or destroyed. This case is as different from *Sanders* as black from white.

Ever since the early development of Anglo-American law, one of the principal procedural devices used to facilitate the operations of the judicial process has been the dichotomy of law on the one hand and fact and discretion on the other. This division was fundamental to Common Law Pleading so dear to the heart of Baron Parke. It is imbedded in every Code of Procedure or Civil Practice Act, and it runs through the Federal Rules of Civil Procedure and the written opinions of innumerable British and American judges. Thus, one would suppose that judges administering Rule 23 and the discovery rules, as well as all the other Federal Rules of Civil Procedure, would, before studying the particular problem before them, ask themselves the question: Is this a matter of law or is it a matter of fact or discretion? And if we do this with reference to the numerous separate provisions of Rule 23, what do we find?

We find, as might reasonably be expected, a series of requirements, some of which are matters of law, and some of which are matters of mixed law and fact. Clear reasoning by the judge is more likely to follow a definite determination of whether he is discussing a matter of law or a matter of mixed law and fact.

In *Eisen III,* we decided as matter of law that, with respect to the 2,250,000 members of the class who could "be identified through reasonable effort" by the use of computers, "the best notice practicable under the circumstances" was "individual notice," which meant mailing the class notices to each of these 2,250,000 members of the class, using their individual names and addresses. And we further held, as matter of law, in both *Eisen II* and *Eisen III,* that the plaintiffs were required to pay the expense involved.

The Supreme Court in *Eisen IV* ruled as matter of law that our interpretation of the notice requirements of Rule 23(c)(2) and our decision that plaintiffs must pay the cost of giving such notice were correct (*Eisen IV,* 417 U.S. 156 at pages 173 ff., 94 S.Ct. 2140

(1973)). These decisions by us and by the Supreme Court were not in any sense made in the exercise of any judicial discretion. Indeed, Rule 23 on its face states that notice to these identifiable class members "is not a discretionary consideration." And these decisions are binding on all federal courts and judges, including District Judge Platt and our Court of Appeals for the Second Circuit.

We turn to Judge Platt's opinion in the case now before us, in which he held that the plaintiff and not the brokerage firms must bear the expense of identifying the names and addresses of the members of the class and the cost of sending the class notices to them. How the parties to the case before us can consider this ruling to have been made in the exercise of any judicial discretion is beyond our understanding. What Judge Platt says in *In re Franklin National Bank Securities Litigation,* 73 F.R.D. 25, 27 (E.D.N.Y.1976), is that he is bound by the panel decision in *Sanders,* which clearly held that the question at issue was one of notice under Rule 23, and that, as held by the Supreme Court in *Eisen IV,* as matter of law the class representatives must pay. And he further held that his ruling was supported by a then recent decision to the same effect, in an identical case, by Judge Stewart in *Weiss v. Drew National Corp., et al.,* 71 F.R.D. 429 (S.D.N.Y. 1976).

Thus, by the application of two universally acknowledged and fundamental rules of procedure, we hope we have dissipated some of the cloud of confusion that has obscured the real issues in this important, complicated, and difficult case. The class representatives had available to them from the beginning a method of obtaining the list of names and addresses of the beneficial owners by the issuance of *subpoenas duces tecum* with the assurance that the court issuing the subpoenas would have the power under Rule 26 to protect the class representatives vis-à-vis the brokerage houses from undue burden or expense, as was done by Judge Gurfein (as a District Judge) in *Blank v. Talley Industries, Inc.,* 54 F.R.D. 627 (S.D.N.Y.1972). *See* Part Three, *infra.*

### C.

*How Are the Notice Requirements of Rule 23 To Be Applied to Record Owners ("Street Names") and to Beneficial Owners as Members of the Class?*

We now approach the most difficult phase of the case, the making of new law, and the decision of how the notice requirements of Rule 23 should be applied in cases where securities have been placed in "street names," and we have to deal both with the holder of record and the beneficial owner. This is the question so many courts have faced and backed away from, and we have no authoritative[4] ruling to guide us. We think it is high time that this issue be frankly faced and decided.

One of the contentions asserted by plaintiff is that notice to the "street names" with a request or direction that the class notice be forwarded to the beneficial owners will be a sufficient compliance with the notice provisions in Rule 23 and with the constitutional requirements of due process. We do not see how this contention can bear critical analysis. There is no denial in any of the briefs submitted to us that the beneficial owners are members of the class represented by plaintiff. Nor can there be since the class is defined as "purchasers" of the securities and not "registered owners" or "record holders." Moreover, there is no

---

4. Defendants rely upon the following opinions of District Courts: *In re Memorex Security Cases,* 61 F.R.D. 88 (N.D.Cal.1973); *Lamb v. United Security Life Company,* 59 F.R.D. 25 (S.D.Iowa 1972); and *Popkin v. Wheelabrator-Frye, Inc.,* Fed.Sec.L.Rep. (CCH) ⸗ 95,411 (S.D. N.Y.1976). But flat statements by District Judges, unsupported by reasons, are of doubtful value as precedents. Judge Mansfield's opinion as a District Judge in *Berland v. Mack,* 48 F.R.D. 121 (S.D.N.Y.1969), however, is different. His analysis and reasoning are cogent but certain comments are not consistent with *Eisen IV,* decided 5 years later by the Supreme Court. The only case *contra* cited by plaintiff is an unreported Kansas case, *In re Clinton Oil Company Securities Litigation,* M.D.L. # 137 (D.Kan. April 5, 1976). We do not find this case persuasive for a variety of reasons that we do not think it necessary to state in detail.

assertion that these beneficial owners are not entitled to any notice at all. Indeed, plaintiff conceded on oral argument that the beneficial owners are entitled to notice, and he further stated his willingness to assume the costs of extra mailings and extra copies of notices required for communication with the beneficial owners. His argument is that notice to the record holders of the stock, supposedly the 661 names on the lists referred to in but omitted from the Joint Appendix, would be sufficient.

The requirement of Rule 23 is that notice be the best notice practicable under the circumstances and that it must include "individual notice to all members who can be identified with reasonable effort." In the light of the 2,250,000 members in *Eisen,* we cannot say that it would be "unreasonable effort" to search the records of the brokerage houses in this case and notify the beneficial owners whose names and addresses are revealed by such a search. The real question here is who is to bear the cost of making the "reasonable effort," and that is what was decided in *Eisen IV,* 417 U.S. 156, 176, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1973): "There is nothing in Rule 23 to suggest that the notice requirements can be tailored to fit the pocketbooks of particular plaintiffs." The question is no longer open; there is no room for a general ruling shifting this burden elsewhere. And no amount of argument that the brokerage houses may or may not be under some kind of duty to forward the notices can relieve the plaintiff himself of the responsibility of notifying

the members of the class, as *Eisen IV* requires him to do.[5]

Since *Eisen* there has been a very considerable number of settlements in class actions, and eleven of these have been cited and referred to in the voluminous briefs filed by the parties in this case, generally without any indication that the notices given and the payment of the expenses involved in compiling lists of names and addresses were part of the apparatus involved in consummating a settlement, including various stipulations by the parties and miscellaneous rulings by the trial judge. These eleven settlement cases cited in the briefs, we think, are typical of large numbers of other settlements in various types of class actions. There is no denying the fact that in a large number of these settlement cases some means has been found to ascertain most, if not all, of the names and addresses of the beneficial owners of stock placed in "street names" by brokerage houses and others, and class notices, including those stating the terms of the settlement awaiting judicial approval, were generally mailed to those beneficial owners whose identity had been ascertained by reasonable effort. These results, however, were due largely to the co-operation of the various parties and the supervision of the trial judge. The variety of expedients resorted to with respect to what should be done to ferret out these names and addresses, and how those doing the necessary research should be reimbursed, is illuminating.[6]

5. Notice to the record holders alone might furthermore be insufficient under *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) which teaches that notice is sufficient only if it is "reasonably calculated to reach those who could easily be informed." 339 U.S. at 319, 70 S.Ct. at 660. Because there is no reason to assume that by notifying record holders the beneficial owners of stock would in fact receive notice, mere notification to record holders might not meet the *Mullane* test. It is the beneficial holders who are the members of the class, as all counsel concede, it is the class members to whom notice is due, and the notice due to the class members is notice reasonably calculated to reach them.

6. *See Greenfield v. Villager Industries, Inc.,* 483 F.2d 824 (3d Cir. 1973); *In re Four Seasons Securities Laws Litigation,* 63 F.R.D. 422 (W.D. Okl.1974); *Girsh v. Jepson,* 521 F.2d 153 (3d Cir. 1975); *Seiffer v. Topsy's International, Inc.,* 70 F.R.D. 622 (D.Kan.1976); *Entin v. Barg,* 412 F.Supp. 508 (E.D.Pa.1976); *Frankenstein v. McCrory Corp., et al.,* No. 74 Civ. 727 (S.D.N.Y. March 1, 1976); *In re Clinton Oil Company Securities Litigation,* M.D.L. # 137 (D.Kan. April 5, 1976); *Jahre v. Rait,* No. 74 Civ. 805 (E.D.N.Y. May 19, 1976) (*see In the Matter of the Order dated May 19, 1976 per the Hon. Jack B. Weinstein Purporting to Compel Various Brokerage Firms to Render Services Without Reimbursement,* No. 76 Civ. 1305 (E.D.N.Y. Oct. 15, 1976)); *Kushner v. Ampex Corporation,* No. C 72–360 SW (N.D.Cal.1976)

The Street Name Studies by the SEC were primarily industry studies for the purpose of ascertaining whether or not the SEC should propose some changes in the "street name" practice and the Stock Exchange and other Rulings to the effect that the brokerage houses were not required to forward Proxy Notices and other similar materials to the beneficial owners unless reimbursed for the expense of doing so. No change in the existing industry practices and procedures was recommended. This, however, does not solve the problem of notice to the beneficial owners in this case; it only supports, to a limited extent, the claim of defendants that in a very substantial number of instances class notices, if sent to the brokerage houses, even with a request or direction that they be forwarded, will never reach the beneficial owners.[7]

Defendants are reasonably reluctant to dispose of these class actions by settlements unless the real parties in interest, the beneficial owners, are individually notified. As a matter of plain practicality, how is a defendant to make any reasonable appraisal of the situation he faces, unless he has reliable information concerning the number of persons constituting the class and the number of those who have opted out? If the notices are sent only to the record owners or "street names," it is a practical certainty that large numbers of these benefi-

cial owners could come around after a settlement had been consummated and bring a new class action for the same relief that had been sought in the first action. The contention that the brokerage houses were under a legal or equitable duty to forward the notices would not serve as a protection or defense to such suits. Moreover, there are too many variables: conditions in the securities business in different parts of the country are not the same, there have been many failures of brokerage houses, and many mergers. We must reject the contention of the class representatives that notice to the "street names" or record holders, with a request or direction to forward the class notice to the beneficial owner, is a sufficient compliance with the notice requirements of Rule 23.

## PART TWO.

### *Intermediate Summary and Commentary.*

It is our endeavor to squeeze some of the ambiguities, contradictions, and confusion out of the reported and unreported class action cases involving "street names" in general and as they appear in this case in particular. It is also our endeavor to leave as few loose ends as possible. It will be recalled that in both *Eisen II,* 391 F.2d 555, 563 (2d Cir. 1968), and in *Eisen III,* 479 F.2d

---

[.] (trial transcript); *In re Nissan Motor Corporation Antitrust Litigation,* 552 F.2d 1088 (5th Cir. 1977); *In Re Penn Central Securities Litigation,* 560 F.2d 1138 (3d Cir. 1977).

Several of these cases illustrate the practice, evidently followed by agreement of lawyers for the class representatives and lawyers for the defendants, of by-passing the initial class notice and sending the initial class notice and the notice of the terms of a proposed settlement more or less simultaneously and just before the hearing at which the trial judge approves or disapproves of the settlement. This practice would seem to be inconsistent with the requirement that certification as a class action be determined "as soon as practicable after the commencement of the action" and the implication that the initial class notice should follow promptly after the certification. So far as we are aware the only cases in which this question has been specifically passed upon have held that the sending of the initial class notice should not be postponed. One reason, as stat-

ed in *In re Sugar Antitrust Litigation,* 73 F.R.D. 322, 359 (E.D.Pa.1976), is: " * * * so potential class members can be notified of such a proceeding, thereby alerting them to the dispute and allowing them to forego the institution of individual actions." Another reason is that Rule 23 contemplates that absentee class members shall decide whether or not to opt out "at the outset of the suit," and not delay making this decision "until the case reaches judgment." *In re Nissan Motor Corporation Antitrust Litigation,* 552 F.2d 1088, 1104 (5th Cir. 1977). This is the "sideline sitting" referred to by Judge Wisdom in *Robinson v. Union Carbide Corp.,* 544 F.2d 1258, 1262 (5th Cir. 1977).

**7.** *See Street Name Study: Final Report,* n. 2 *supra,* at pp. 7 and 21; National Association of Securities Dealers, *Rules of Fair Practice* (1977), Art. III, Section 1, NASD Manual (CCH) ⌐ 2151; New York Stock Exchange Rules 451 and 465, 2 NYSE Guide (CCH) ¶¶ 2451 and 2465.

1005, 1013–1015 (2d Cir. 1973), we held that Rule 23 was to be liberally construed. By this we meant construed in such a manner as to facilitate the functioning of all features of the Rule together as a unit for the purpose of affording a flexible and effective means of disposing of substantial numbers of small claims while at the same time preserving and protecting the rights of non-litigating class members. This opinion is in the tradition of such a liberal construction.

### A.

Our holdings may be summarized as follows:

(1) We hold that the District Court has no power to direct the brokerage houses to provide at their own expense a list of the names and addresses of the beneficial owners as members of the class, because the brokerage houses are not parties to the case and the District Court has no personal jurisdiction over them.

(2) We hold that taken separately or together the principles of law decided by the *en banc* court in *Sanders* do not control the decision of this case.

(3) We hold that the District Court was not authorized by Rule 23 to direct the defendants to pay the brokerage houses or anyone else for compiling lists of the names and addresses of the beneficial owners or to take any responsibility for the mailing of notices or otherwise implementing the prosecution of the action against them.

(4) We vacate so much of the November 30, 1976 order appealed from as directs the class representatives to mail notices to the "street names" with a request that such notices be forwarded to the beneficial owners, as Rule 23 does not contemplate giving notice to alleged agents or to any persons other than the members of the class.[8] We reject as erroneous the contention that giving notice to the "street names" is a sufficient compliance with the notice requirements of Rule 23.

(5) We hold that the members of the class defined by plaintiff are the beneficial owners of the respective securities, that it is already clear that most if not all of these beneficial owners can be identified with reasonable effort, and that it is the responsibility of the class representatives to ascertain the names and addresses of these beneficial owners and mail the notices to them, all at the expense of the class representatives.

### B.

One might suppose that these rulings dispose of the case. But they do not. The two oral arguments on April 27 and November 15, 1977 were recorded and the transcripts have been preserved.

On the second oral argument, counsel for the class representatives contended that, shortly after 1966 when the revised Rule 23 took effect, there was no difficulty and no expense involved in obtaining from the brokerage houses the names and addresses of the beneficial owners in cases where "street names" had been used. Later, he asserts, and after someone saw an opportunity to embarrass or defeat the prosecutions of class actions in cases of alleged security frauds, the brokerage houses ceased this co-operation and insisted upon being paid huge and wholly exorbitant fees for the research and use of computers they said were necessary to cull the names and addresses of the beneficial owners. This is a serious and disturbing situation and we think we can deal with it. There are always available to the federal courts flexible powers adequate to devise means to avoid or surmount obstacles to justice.

In this connection, the principal argument of counsel for the class representatives appeared to be reduced to the contention that, in deciding whether the beneficial owners could be identified with reasonable effort, the cost of identifying them must be taken into consideration. This view, as we have stated, is foreclosed by *Eisen IV*. But

---

8. There is no analogy whatever to be drawn between notices under Rule 23 and the various and sundry Federal Rules of Civil Procedure relating to the service of process and the *in personam* and *in rem* jurisdiction of courts.

we see no reason to refrain from an attempt to simplify this case and help dispose expeditiously of all questions relative to the sending of the initial class notice by recommending procedures to be followed on the remand. The discussion of these procedures and the general background of the "street names" practice will be treated in Part Three of this opinion.

### C.

It is easy to appreciate the difficulties that a District Judge must surmount when a complicated class action is assigned to him. He already has a crowded calendar of other cases to be disposed of. Due to a variety of circumstances these class actions have a way of going on and on, year after year.

In the case now before us the Joint Appendix shows no fewer than 387 docket entries. The class has at last been certified and we have before us questions relating to the initial class notice that should have been disposed of long ago. It requires no vivid imagination to describe the amount of time and effort spent by the trial judge and the lawyers in connection with the taking of depositions in the interval between the commencement of the class action and the time of this appeal.

The public at large has no conception of the burdens these class actions place upon the federal judiciary, already pressed beyond all reason by the ever-increasing volume of new types of litigation. And yet, taking all this into consideration, we feel it our duty to say that the only way in which these unconscionable delays and this procrastination can be prevented is by having the presiding judge take a firm grip on the steering wheel and making the lawyers toe the mark. The suggestions we make at the end of Part Three of this opinion will require this sort of control.

### PART THREE.

### A.

#### *"Street Names" and the Brokerage Houses.*

At the time of the first oral argument of this case it appeared to us that the principal effort of the class representatives was to induce us to hold that the brokerage houses, or, as it was sometimes expressed, "the securities industry" should be required as part of its overhead expenses to furnish to plaintiffs in class actions relating to alleged security frauds lists of the names and addresses of the beneficial owners where "street names" had been used. It soon became obvious that the cases relied upon, as stated in Part One A., *supra*, did not support this view, as the brokerage houses were not parties to the class action and the court had no jurisdiction to render any such judgment. But we think a fair appraisal of what was actually happening in the securities industry in the period 1967–1970 and later indicates that the brokerage houses, or at least some of them, may have adopted too rigid a position relative to reimbursement for the expenses involved in culling the names and addresses of the beneficial owners. A more co-operative attitude might well be in order.

What led to the wide use of "street names" was the way it facilitated the prompt handling of a huge volume of transactions on the various exchanges in the buying and selling of securities by investors and speculators. In the 1960's there occurred the so-called "paperwork crisis" in the securities industry. As the number of daily transactions in securities increased rapidly, the clearing of orders fell behind drastically, often by many months, as a result of antiquated methods of record-keeping and, as investors lost confidence, the securities industry suffered. *See* New York Stock Exchange, *Crisis in the Securities Industry, A Chronology: 1967–1970* (1971), at p. 10 & ff. It was partly in response to this situation that the use of nominee names for holding stock became much more widespread. That this was of benefit to the public at large is clear to us. But it is also clear that the more widespread use of "street names" was a principal factor in meeting the "paperwork crisis" in the brokerage houses.

As Rule 23 has general application to a wide variety of types of litigation and as

changes in industry practices may, as in this case, change the circumstances under which class notices may be sent out, the question arises, what adjustment, if any, should the courts make in applying the terms of Rule 23 to the changed conditions of the particular industry involved in a particular case. We think it perfectly clear that controlling interpretations of Rule 23, established by the Supreme Court, must be adhered to. That is to say, the best notice practicable under the circumstances must be given to the members of the class; all the members of the class who can be identified with reasonable effort must be notified; and the expense involved must be defrayed by the class representatives. Those who desire to commence class actions must, before starting such class actions, take into account the incidental expenses that must be paid in order to prosecute the actions. And one of the things they must take into account is the possibility that they may not be able or may not wish to pay these incidental expenses, in which event *Eisen IV* teaches that the action must be dismissed.

But this does not mean that the courts should be blind to the possible existence of practices designed to slow up or make it difficult to prosecute proper class actions. Thus, we will outline suggestions that may be followed on the remand of this case in order to make it unlikely that obstacles will be placed in the way of the culling of the names and addresses of the beneficial owners as members of the class.

### B.

#### Suggestions.

With the above considerations in mind and for the purpose of facilitating the prompt disposition of all problems concerning the sending of the initial class notice contemplated by the terms of Rule 23, we suggest that the trial judge carry out the following procedures:

#### 1.

#### The Hearing.

Promptly after the filing of this opinion the trial judge may establish a continuing hearing, to be conducted at times to be fixed by the trial judge. The trial judge in the exercise of his discretion may decide not to close this hearing until there is a final disposition of all matters concerning the mailing of the initial class notice to the beneficial owners. One of these matters is likely to be the direction of notice by publication with respect to a certain number of beneficial owners whose identity cannot be established by reasonable effort.

The parties to this appeal, including the *amici*, may appear by counsel at the various sessions of the hearing and offer such sworn testimony or exhibits as they think proper.

One of the functions of the hearing will be to supply the deficiencies of proof of basic facts referred to in this opinion, *e. g.*, the number of members of the class, the proportion of "street names" in the class, the method of preparing the list of 661 alleged "street names," and so forth.

Another function of the hearing will be to provide a forum in which progress reports can be placed upon the record with respect to the lists of names and addresses of the beneficial owners that have been obtained. This will facilitate the policing of the procedures referred to below with reference to the brokerage houses and others.

#### 2.

#### Letters to be Sent to the "Street Names" Other Than the Brokerage Houses.

With the co-operation of counsel for the respective parties we obtained a copy of the List of 661 Street Names that was omitted from the Joint Appendix; and this list, at our request, was broken down into categories. Thus, we have a separate listing of the banks, the brokerage houses, and others holding securities in nominee names. Knowledge of this breakdown is of critical importance to the suggestions we are about to make on the subject of ascertaining the names and addresses of the beneficial owners. Of the 661 "street names" the largest category is that of the banks, of which

there are 355. We think a letter, with one follow-up, will almost certainly elicit, promptly and without any expense whatever except postage, the names and addresses of all the beneficial owners who have agreed to permit the banks to use the indicated nominee names. As appears on the face of the List, these beneficial owners are customers of the banks or others interested in testamentary or other trusts.

The category of "others," amounting to 125, is of particular significance in connection with the identification of the beneficial owners as it contains a miscellany of purchasers of securities most of whom, we think, would give an immediate and favorable response, stating the names and addresses of the beneficial owners on whose behalf they hold securities, without any thought of being paid anything for taking the trouble to respond. There are many churches and eleemosynary institutions, such as the American Cancer Society, hospitals, memorial and retirement funds, and groups of investors. All of these, we think, would be glad to receive the information contained in the initial class notice.

### 3.

#### *The Brokerage Houses.*

This leaves the brokerage houses. There are 181 brokerage houses on the List of 661 Street Names, and 103 of these are in New York City. As to these the *subpoena duces tecum* procedure above referred to at various portions of this opinion is available. And with respect to the New York City brokerage houses these *subpoena duces tecum* proceedings could be made returnable before the trial judge in charge of the case. This is permissible as to the brokerage houses within a distance of the Federal Courthouse in the Eastern District of New York, as provided in F.R.C.P. 45. The remaining 78 brokerage houses consist principally of a single brokerage house in cities such as Cleveland, Dallas, San Francisco, and New Orleans, with the largest group of 9 in Los Angeles, 6 in Chicago, and 5 in Boston.

Before resorting to *subpoenas duces tecum*, letters should be sent to the brokerage houses on the List asking for the names and addresses of the beneficial owners.

In this connection we think it relevant to refer to a decision by Judge Gurfein, when a District Judge, made in *Blank v. Talley Industries, Inc.*, 54 F.R.D. 627 (S.D.N.Y. 1972), *supra*, a case cited and discussed in the briefs submitted to us on this appeal. We have examined the original record in that case. *Blank v. Talley Industries, Inc.* was a class action in which the class representatives had encountered a reluctance on the part of one of the brokerage houses to turn over a list of the beneficial owners without first being reimbursed for $570 alleged to have been the cost of operating the computer or otherwise doing "research" to dig out the names and addresses of the beneficial owners. The *subpoena duces tecum* had been issued by Judge Gurfein pursuant to Rule 45(b), and he had power under Rule 26(c) to direct the demanding party, that is to say the class representatives, to pay the $570 as the price of obtaining the list of names and addresses or to deny the application of the brokerage house for reimbursement. This ruling was to be made in Judge Gurfein's discretion. All the other brokerage houses had already furnished the lists without demanding any payment from the class representatives to reimburse them for the use of their computers and the "research" connected with culling the names and addresses of the beneficial owners. What Judge Gurfein wrote on the subject, when he denied the application of the single dissenting brokerage house, may be of some interest to the brokerage houses in this case. He wrote (54 F.R.D. at 627):

> In view of the number of brokerage firms involved in the plaintiffs' court-ordered quest for class members' identities, it would be unfair to compel the plaintiffs to cover the costs of the firms' production of information, which costs when cumulated would indeed be burdensome. No other broker has requested reimbursement. In this class action I do not feel compelled in my discretion to require plaintiffs to pay the expenses of Merrill

Lynch. These expenses are in the nature of overhead expenses necessary for responding to legitimate court orders involving the customers of stock brokers.

*Conclusion.*

We agree that the certification of the class as defined by plaintiff was correct. We vacate the stay and the remaining portions of the orders appealed from, and we remand the case for further proceedings as stated in this opinion. We retain jurisdiction. No costs.