**In re VIATRON COMPUTER SYSTEMS CORPORATION LITIGATION.**

**Appeal of ARTHUR ANDERSEN & CO.**

**Nos. 79–1351, 79–1452.**

United States Court of Appeals, First Circuit.

Argued Nov. 7, 1979.

Decided Jan. 22, 1980.

George H. Lewald, Boston, Mass., with whom Thomas G. Dignan, Jr., William F. McCarthy, Steven T. Hoort, Ropes & Gray, Boston, Mass., Charles W. Boand, and Wilson & McIlvaine, Chicago, Ill., were on brief for appellant.

Jared Specthrie, New York City, with whom Stephen Moulton, Boston, Mass., Jerome M. Congress, Craig L. Tessler, Milberg, Weiss, Bershad & Specthrie, New York City, and Moulton & Looney, Boston, Mass., were on brief, for appellees.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, CLARKE, Jr., District Judge.*

COFFIN, Chief Judge.

This appeal arises from five consolidated class actions brought on behalf of the purchasers of certain securities of Viatron Computer Systems Corp. (Viatron), a Massachusetts corporation, after the filing of a bankruptcy petition by Viatron in 1971. Read together, the complaints allege violations of Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, and Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), in the issuance of documents which were allegedly materially misleading with respect to Viatron's prospects for survival. Among those named as defendants are Viatron's officers and directors, the underwriters of its convertible

* Of the Eastern District of Virginia, sitting by designation.

subordinated debenture and stock offerings, a consulting and engineering firm retained by the underwriters in connection with their due diligence inquiries, and the appellant, Arthur Andersen & Co. (Andersen), an auditing and accounting firm which certified the financial statements in the prospectus.

Following certification of two classes pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, a joint notice of pendency of the class actions was approved by the court and mailed to all transferees of record of the relevant Viatron securities in April of 1974. The notice was also published in the *Wall Street Journal.* Since the mailed notice approved by the district court was delivered only to transferees of record, it was not sent directly to class members who were beneficial purchasers of Viatron securities, that is, who purchased securities for which the record title was held in the "street names" of nominee brokerage houses, banks and other entities.[1] Instead, the court order provided that additional copies of the notice could be obtained by the street name nominees for forwarding to beneficial purchasers. At the time that the court approved this notice, appellant Andersen explicitly approved both its form and method of distribution.

Five years later, after extensive discovery consisting of substantial document production as well as over one hundred days of depositions, counsel for the plaintiffs and the underwriter defendants agreed to a proposed settlement, subject to court approval, whereby the underwriters would pay $1,850,000 to be divided by the two main classes in full satisfaction of any liability which the underwriters might have. Counsel for the plaintiffs then applied to the district court for approval of both the settlement and the proposed method of distributing notice of it to the class members.

The method proposed for sending notice of the partial settlement to the class members was similar to that employed in distributing the 1974 notice in that it provided for mailing of individual notice to all transferees of record. It differed, however, in that the individual notices to be mailed to street names who might be nominees for unknown beneficial purchasers included a request that the nominee either forward copies of the notice to the beneficial purchasers or provide plaintiffs' counsel with their names and addresses. Plaintiffs' counsel further proposed that the settling underwriter defendants who held record title as nominees be directed by the court to submit "reasonably available" names and addresses of their beneficial purchaser customers, who could then be provided with individual notice.

On May 4, 1979, the district court held a hearing for the purpose of determining whether it should approve the partial settlement and notice pursuant to Rule 23(e). At this hearing, appellant Andersen objected to the proposed notice and method of distribution. In particular, Andersen claimed that the beneficial purchasers were entitled to individual notice and that the proposed method of notifying them was not the "reasonable effort" required by Rule 23, as interpreted in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (*Eisen IV*). Andersen also claimed that the contents of the notice were inadequate.

The district court rejected Andersen's arguments and approved the proposed notice of partial settlement. The court did, however, order that the plaintiffs' counsel "shall take such reasonable steps as the court determines are necessary to identify and provide notice to beneficial purchasers and shall periodically report to the court thereon."[2] Andersen still regarded the order as unsatisfactory and brought this appeal.

---

1. For a more detailed description of the "street name" phenomenon, *see In Re Franklin National Bank Securities Litigation*, 574 F.2d 662, 664 n.2, 673 (2d Cir. 1978) *modified*, 599 F.2d 1109 (2d Cir. 1979).

2. Pursuant to this order, plaintiffs' counsel twice mailed to the nominees letters requesting the names and addresses of beneficial purchasers and offering to pay the reasonable costs which the nominees might incur in complying with the request.

Determining what efforts are required in order to attempt to provide notice to beneficial purchasers of securities held by street name nominees is far from a simple exercise. The only appellate court to attempt to make such a determination found that "reasonable efforts" must be made to send individual notice to such purchasers, *see In Re Franklin National Bank Securities Litigation*, 574 F.2d 662 (2d Cir. 1978) (*Franklin I*), *modified*, 599 F.2d 1109 (2d Cir. 1979) (*Franklin II*).

In this particular case, however, we need not reach the notice issue. Plaintiffs-appellees argue that Andersen does not have standing to appeal the court order approving the settlement notice and agreement. We find this argument persuasive and dispositive of this appeal.[3]

 A nonsettling defendant does not ordinarily have standing to object to a court order approving a partial settlement since the nonsettling defendant is generally not affected by the settlement. *In Re Beef Industry Antitrust Litigation*, 607 F.2d 167 at 171 (5th Cir. 1979); *Seiffer v. Topsy's Int'l, Inc.*, 70 F.R.D. 622, 631 n.11 (D.Kan. 1976); 3 Newberg on Class Actions § 5660b at 564–65 (1977). In this case, Andersen seeks to avoid this general rule by limiting its objections to the method of distribution and form of the notice, rather than the actual merits of the settlement. With regard to the notice and its method of distribution, Andersen asserts two reasons in support of its claim that it has standing.

First, Andersen notes that upon completion of this suit, it will be able to raise a res judicata bar to any future proceedings brought against it on the same issues by class members. *See Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 996 (2d Cir.), *cert. denied sub nom. Bersch v. Arthur Andersen & Co.*, 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975). If the notice to class members is deficient, however, then those members of the class who should have been given notice of the prior suit but were not

might avoid the preclusive effect of this suit. *See Bogard v. Cook*, 586 F.2d 399, 408–09 (5th Cir. 1978). *See generally*, Note, *Collateral Attack on the Binding Effect of Class Action Judgments*, 87 Harv.L.Rev. 589 (1974). Thus, Andersen argues, if it is correct in its claim that the notice of partial settlement is deficient, it might lose the ability to protect itself against similar subsequent suits.

The defect in Andersen's argument is that a Rule 23(e) notice of partial settlement is not intended to serve as a Rule 23(c)(2) notice of the pendency of the suit. The Rule 23(c)(2) notice of pendency, issued in 1974, with its options for opting out, is the basis on which Andersen can subsequently raise its claims of preclusion. This notice was required, whether or not any settlement was contemplated. If the 1974 notice was adequate, and Andersen subsequently prevails in the litigation, it will receive the full preclusive effect of its victory whether or not the notice of partial settlement was even sent, much less sent properly.

Thus, Andersen's interest in maximizing the preclusive effect of any victory which it might achieve only establishes that it has standing to challenge the 1974 notice. While it is perhaps possible that the 1979 notice of partial settlement might have had the incidental effect of curing any defects in the 1974 notice, and thus Andersen can arguably claim to be "harmed" by the alleged failure of the 1979 notice to have had such an effect, we think this insufficient reason to allow Andersen to bootstrap its complaints with the 1974 notice into an attack on the 1979 notice of partial settlement. This is certainly not a case in which the two notices are in fact a single notice, *compare In Re Beef Industry Antitrust Litigation, supra* at 172, *with In Re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088, 1093 (5th Cir. 1977). Since Andersen did not object to the 1974 notice, it clearly had no right to assume that there would be

---

**3.** Appellees also contend that the 1979 order is not appealable under the collateral order doctrine. In light of our holding that Andersen does not have standing to appeal the order, we do not address this issue.

a settlement five years later which might cure any defects in the 1974 notice. Once such a settlement in fact occurred, the process of finalizing it is best left to the court and the parties who are a part of it.

The second argument which Andersen raises in support of its claim of standing is that by granting it standing, we would insure that the absent members of the plaintiff class would have a surrogate to protect their rights to receive proper notice. With regard to the notice of partial settlement, however, the settling defendants have a much greater interest than does Andersen in assuring that the notice is proper, for they stand to lose the preclusive effect of the settlement if it is not. Moreover, the district court itself has an independent obligation to insure that the notice of settlement is proper. Fed.R.Civ.P. 23(e); *see* Note, *supra* at 602–03 n.72. Since the absent class members are thus not without protection, any additional benefits which might stem from allowing Andersen also to speak on their behalf are minimal and, we hold, are outweighed by the unnecessary frustrations of the settlement process—which itself is "highly favored in the law", *D. H. Overmyer Co. v. Loflin*, 440 F.2d 1213, 1215 (5th Cir. 1971)—that might result from the participation of a nonsettling defendant.

Finally, we note that Andersen cannot now appeal the court order approving the 1974 notice. If Andersen had objected to the 1974 notice in the district court when it was proposed, then perhaps Andersen could have immediately appealed the 1974 order approving the notice since it might have been final under the collateral order doctrine of *Cohen v. Beneficial Industrial Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), *cf. Eisen IV, supra* (order imposing costs of notice on defendants final). Moreover, if Andersen had objected in 1974, it might have even been possible to entertain an appeal concerning the order after final judgment is rendered in the case as a

whole if the finality of the 1974 order under *Cohen* were in fact unclear, *cf. Drayer v. Krasner*, 572 F.2d 348, 353 n.6 (2d Cir. 1978) ("Query whether a party against whom a *Cohen*-type final order was rendered but excusably failed to recognize it to be such should be precluded from questioning it on appeal from the truly final judgment . . . .")

Andersen, however, did not even object to the 1974 order until 5 years later after extensive discovery had passed, and it is not in the position of being able to proffer any excuse for its long delay in recognizing what it now claims to be a major defect in the 1974 notice, since the primary authority for its attack on the notice is the *Eisen IV* decision of 1974.[4] We therefore hold that Andersen has no standing to appeal the district court's 1979 order and is estopped from appealing the 1974 order.

---

4. Andersen also relies on the *Franklin I* decision; however, that was decided a full year before Andersen voiced any complaints.