**MURPHY v. NORTH AMERICAN LIGHT & POWER CO. et al.**

**WALTERS et al. v. SAME.**

District Court, S. D. New York.

June 14, 1940.

William M. Dederick, of New York City (Max Berkow and Louis Braun, both of New York City, of counsel), for plaintiff John H. Murphy.

Lawrence R. Condon, of New York City (Robert T. Woodruff, of New York City, of counsel), for plaintiffs John W. Walters and Helen D. Walters, and others.

Hodges, Reavis, Pantaleoni & Downey, of New York City (Francis X. Downey and Philip F. Belcher, both of New York City, of counsel), for defendant North American Light & Power Co.

WOOLSEY, District Judge.

I fix at $200,000 the total allowances to plaintiffs' attorneys for all the work done and disbursements made by them and not taxed in these two causes and in all ancillary proceedings before the Securities and Exchange Commission necessitated in order to implement the decision of the Circuit Court of Appeals, and

I hereby provide that these total allowances are to be divided equally between William M. Dederick, Esq., attorney for complainant John H. Murphy, and Lawrence R. Condon, Esq., attorney for plaintiffs John W. Walters, et al., and, accordingly,

I order the North American Light & Power Company to pay over to each of the said attorneys the sum of $100,000 on the satisfactions hereinafter prescribed.

I. The facts involved in these two causes,—which were tried at one time on stipulations of fact which, mutatis mutandis, were identic—are for present purposes sufficiently set forth in my opinion, Murphy v. North American Company et al. (Walters et al. v. North American Company et al.), D.C., 24 F.Supp. 471, at pages 474–479; and in the opinion of the Circuit Court of Appeals—wherein my opinion was slightly modified, 2 Cir., 106 F.2d 74, at pages 76–80.

II. By 1934 the North American Light & Power Company—hereinafter called the Power Company—was not in a good position to maintain litigation at arm's length against the North American Company. For the Power Company had become in 1934 a 73% controlled subsidiary of the North American Company, and it had officers and directors who were also officers and directors of the North American Company.

It was felt, therefore, that any effort on the Power Company's part to litigate the question here involved might have seemed to be infected with collusion, and, if it were unsuccessful, might have been subject to the criticism of stockholders.

The actual situation as to the indebtedness of the Power Company to the North American Company was never concealed but was reported to stockholders of both Companies in 1935 and 1936, together with the fact that resort might have to be had to litigation in order to solve the situation with satisfaction to the parties.

III. It was, therefore, not news to stockholders when on September 29, 1937, complainant Murphy, on behalf of himself and all other preferred stockholders of the Power Company, and on behalf of the Power Company, commenced an action to compel the North American Company to surrender the notes it had received on advancing funds to the Power Company in 1935 and 1936, and to accept in lieu thereof, in accordance with its contract, shares of common stock of the Power Company, to refund to the Power Company all interest received on the notes and to cancel any claims for interest accrued but unpaid.

On March 28, 1938, the complainants Walters et al., instead of intervening in the Murphy action, which was brought by Murphy on behalf of himself and all other preferred stockholders of the Power Company as well as on behalf of the Power Company, commenced a similar action.

IV. Steps were not taken to stay the Walters' suit pending decision in the Murphy suit. So both suits, after issue in each was joined, awaited trial on the calendar of this court.

Consolidation of the suits by order, under Title 28, United States Code, Section 734, 28 U.S.C.A. § 734, would not have fused the two causes. Johnson v. Manhattan Railway Co., 289 U.S. 479, at page 496, and cases cited in a footnote on that page, 53 S.Ct. 721, 77 L.Ed. 1331.

Only on an intervention in behalf of Walters, allowed by the court, could one suit have taken the place of two.

But the Walters' suit was a perfectly proper litigation to institute if Mr. Condon, attorney therein, did not wish by intervention in the derivative suit brought by Murphy to join in a cause wherein Mr. Dederick, attorney for Murphy, would be dominus litis. Cf. Dresdner v. Goldman, Sachs Trading Corp., 240 App.Div. 242, 249, 269 N.Y.S. 360.

Consequently, after the Walters suit was brought, the two suits proceeded independently and substantially pari passu until—after the facts in each were stipulated—they were brought on for trial before me in the late spring of 1938.

V. The result of the two causes, briefly summarized, was that the parties were restored as nearly as might be to the position which they would have occupied if the contract,—which was the subject matter of the suit between the North American Company and the two sets of plaintiffs brought in behalf of the Power Company—had been performed.

To accomplish this result the District Court provided for decrees, of the same tenor in each cause, as follows, 24 F.Supp. 471, 481:

"(1) Restraining injunctions which will hold the situation in statu quo pending the rescission herein prescribed.

"(2) A mandatory injunction whereby rescission of the transactions of 1935 and

1936, which North American forced on the Power Company, will be accomplished by having North American:

"(a) Surrender the note of the Power Company dated April 1, 1935 in exchange for 2,000,000 shares of the Power Company's common stock.

"(b) Surrender the note of the Power Company dated April 1, 1936 in exchange for 666,667 shares thereof, and,

"(c) Repay to the Power Company all sums which it may have collected as interest on said notes or on the renewal or renewals thereof.

"(3) An order retaining the jurisdiction of this Court in this cause so that it may hereafter modify, on the motion of either party, the provisions of the injunctions in the event that, under changed conditions or administrative rulings, they prove unfair. Cf. United States v. Swift & Co., 286 U.S. 106, 114, 115, 52 S.Ct. 460, 462, 76 L.Ed. 999.

"(4) The question as to whether it is proper for the Court to allow attorney's fees in favor of the plaintiffs in the Walters case (Equity 86—370) and against the North American Light & Power Company is reserved, to be also dealt with under the retained jurisdiction of this Court after the final determination of these causes."

The only change which the Circuit Court of Appeals made in this disposition of the two causes was to recognize the rights of pre-emption of all stockholders of the Power Company.

Instead of providing that the North American Company should· surrender the note of the Power Company, dated April 1, 1935, in exchange for 2,000,000 shares of the Power Company's common stock and also surrender the note of the Power Company, dated April 1, 1936,. in exchange for 666,667 shares of the common stock of the Power Company, it was held by the Circuit Court of Appeals that the stockholders of the Power Company other than the North American Company, should also have their rights of pre-emption recognized and should share, as they might be advised, in such general offering of common stock in the Power Company as might be allowed by the Securities and Exchange Commission. 2 Cir., 106 F.2d at page 82.·

VI. This application is for allowances to the attorneys of record for the complainants in the two causes,—William M. Dederick, Esq., and Lawrence R. Condon, Esq.

Mr. Dederick requests an allowance of $600,000 for fees.

Mr. Condon requests an allowance of $303,779.90, of which it is claimed $3,779.90 represents disbursements which should be properly allowable in such a proceeding as this.

The genesis of such exorbitant claims for fees can perhaps best be described, adopting the pungent language of the stock farm, as being by Cupidity out of Folly.

Indeed, I have never, during the thirty-nine years which covers my experience at the bar and on the bench, encountered a claim for fees so grotesquely out of line with the work done and the actual benefits conferred on the client who is asked to pay them.

In this connection, these remarks are perhaps appropriate:

In the first place, the persons in whose behalf these derivative suits were brought were the preferred stockholders of the Power Company, and, as a result of the suits, the indebtedness to the North American Company by the Power Company, amounting to $4,000,000, was changed into a stock ownership by the North American Company of shares in the common stock of the Power Company. So the preferred stock has regained its priority.

It is perfectly obvious that, except in the event of an immediate liquidation of the Power Company, there could not be any present benefit either to the preferred or to the common stockholders by this change except in respect of past interest recaptured and, perhaps, accrued interest saved.

The two notes under consideration in these causes were two notes by the Power Company each for $2,000,000, issued respectively in 1935 and 1936, and delivered on payment of the sum named in each to the North American Company.

Interest which had been paid on these notes has been recaptured by the Power Company as a result of these two suits. That is the primary recovery and amounts in figures in the aggregate to $594,160.97 in cash.

In addition thereto, and as a secondary item of possible present benefit to the Power Company, some interest which had already accrued to the indebtedness, but had not been paid, has been canceled by

reason of these proceedings. This amounts to circa $300,000, to which owing to its deferred payment some interest would have had to be added if the situation existing when these suits were brought had not been remedied thereby.

Thus the only definitely ascertainable benefit conferred by these proceedings on the Power Company amounts, calculating it, in my opinion, most fairly for the plaintiffs, to a sum of a little more than $900,000.

Having regard to income tax laws and the earnings of the Power Company, what benefit, if any, was conferred on that company, and, by hypothesis, on its stockholders under the decrees for what is in effect a specific performance of the contract between the North American Company and the Power Company, and the consequent transformation of an indebtedness from the Power Company to the North American Company of $4,000,000, into the ownership by North American of common stock of the Power Company, is on the knees of the gods, and necessarily will remain in that uncertain position unless and until there is a liquidation of the Power Company. Cf. In re Medina Quarry Co., 2 Cir., 191 F. 815, 816. Consequently, that transformation cannot properly be considered as a present definite benefit conferred on the Power Company or on its stockholders, whether preferred or common.

■ VII. In all derivative causes like these, it must be remembered that there is not any contractual relationship whatever as to legal services except between the complainant who commences the litigation and his attorneys.

As to any other stockholders, whether common or preferred, the attorneys for the named plaintiffs are pure volunteers and any allowances for fees to which they may be entitled must be estimated principally in the light of the benefit conferred on the corporation and so, by hypothesis, on the other stockholders of all classes, by the activities of counsel on behalf of the stockholders who brought the derivative suit.

As I have stated above, in my opinion the measure of present actual benefit to the Power Company under a most generous method of valuing the results of these causes can be fixed in round figures at $900,000.

This, it will be noted, is less than the amount being asked by the two attorneys for the two sets of plaintiffs.

■ In approaching the determination of fees properly to be allowed in these causes, one must, as a practical matter, lump the services of attorneys for both complainants together and then see how the total appropriate fee thus fixed for those services should be allocated between them. Cf. In re Osofsky, D.C., 50 F.2d 925, 926.

■ In considering the amount of the total fee herein, it must be remembered—

(1) That although success is a condition precedent to any allowance in causes of this kind, these causes cannot be considered to have been brought, accurately speaking, on a contingent fee basis.

Mr. Condon has been paid by his complainants $5,425, and $1,085 expenses.

As far as Mr. Dederick is concerned, the Power Company agreed to pay him, whether he won or lost the Murphy suit, a portion not exceeding $5,000 of his fee, and a portion not exceeding $2,500 of the expenses of his client Murphy.

(2) That every contingent fee implicitly involves a contract of some kind between client and attorney, whereas here we have causes wherein the attorneys for the complainants represented a few preferred stockholders and were volunteers vis-à-vis all other stockholders of the Power Company of whatever rank.

This is another reason why the method of fixing the fee in a cause of this kind must be slightly different from that in the usual case wherein a court is faced by the far from agreeable duty of assessing the value of the services of attorneys, and further

(3) That, in so far as the Power Company and the stockholders who were not named as complainants are concerned, these causes looked at in their true light are really voluntary speculations in fees by the attorneys for the complainants.

VIII. It is appropriate to give allowances in causes like these which involve corporate therapeutics. Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157; Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184.

Though having a contingent flavor because any allowance in causes of this kind is conditioned on success, Trustees v.

Greenough, 105 U.S. 527, 529, 26 L.Ed. 1157, as above observed, these are not contingent causes for there is no contract with any stockholders other than the parties to the action, but find their true analogue in salvage causes on a pure salvage basis of no cure no pay, wherein maritime law conditions any recovery on success and fixes the quantum of recovery on the basis of the efforts required and of benefit to the salved ship, cargo and freight, or their owners.

After the event, percentages allowed may, of course, be calculated, but benefits conferred in the light of the efforts required are the real basis of the salvage awards, as they should be in causes like these.

Allowances in causes of this kind, however, should not be niggardly for appetite for effort in corporate therapeutics should, as in salvage and in bankruptcy cases, be encouraged. In re Osofsky, D.C., 50 F.2d 925, at page 927.

IX. Where two lawyers have—even by the very antagonistic co-operation here evident—together contributed to a successful issue of such causes as these, the benefit conferred on the corporation whose stockholders they represent, is what mainly counts, and, looked at in the light of the effort required and the other elements set forth in In re Osofsky, D.C., 50 F.2d 925, 927, sets the basis of the total fee to be allowed.

After the total fee is fixed, the question must then be decided as to what proportion thereof shall be allocated to the attorneys for each set of plaintiffs, just as in the case of a plurality of salvors the total salvage award is divided and allocated as between them. Cf. Robinson on Admiralty, pp. 745, 746.

In these two causes the attorneys for the North American Company, with the far sighted astuteness characteristic of them, did not attempt to and did not put any difficulties in the way of investigation by the plaintiffs' attorneys of the facts involved, and finally the facts were stipulated.

The question that really was involved in these causes was what were the legal inferences that should be drawn from the stipulated facts. Consequently, the efforts of the plaintiffs' attorneys, although they have sought in their petitions greatly to magnify them, were not, in my opinion—

knowing what I do about the two causes—great in respect of the facts, although the legal questions involved were not free from difficulty, as is evidenced by the dissent of Judge Swan from part of the opinion of the Circuit Court of Appeals.

X. I fix the proper total allowance for all the services rendered, having regard to all the circumstances herein and the result hereof, at $200,000.

I allocate one-half thereof to the attorneys for each set of plaintiffs, out of which they must repay themselves for their several disbursements which have not already been included in the taxed costs and disbursements herein.

Orders may, therefore, be entered on the usual notice providing that the Power Company pay $100,000 to William M. Dederick, Esq., and $100,000 to Lawrence R. Condon, Esq., on receipt from them of separate satisfactions acknowledged by each of them before a notary public.