**FIRST HARTFORD CORPORATE PENSION PLAN & TRUST, on Behalf of Itself, Dollar Dry Dock Bank of New York, and All Other Similarly Situated Shareholders of Dollar Dry Dock Bank of New York, plaintiff,**

**and**

**Federal Deposit Insurance Corporation, plaintiff/intervenor,**

**v.**

**The UNITED STATES, defendant.**

**No. 96–801C.**

United States Court of Federal Claims.

Oct. 30, 2002.

---

Thomas M. Buchanan, Washington, DC, for the plaintiff. Eric W. Bloom, Charles B. Klien, and Ralph E. Frable, of counsel.

Michael P. Condon, Washington DC, for the plaintiff/intervenor. John V. Thomas, of counsel.

Shalom Brilliant, Washington, DC, with whom was Deputy Assistant Attorney General Stuart E. Schiffer for the defendant.

## OPINION

YOCK, Senior Judge.

This matter is now before the Court on the motion of the Federal Deposit Insurance Corporation (the "FDIC"), the plaintiff/intervenor in this case, to dismiss this action with

prejudice (the "Motion to Dismiss"). The United States (the "Defendant" or the "Government") responded to the Motion to Dismiss on August 26, 2002, indicating that it had no objection to the Motion to Dismiss and further noting that its pending Motion for Sanctions should not be affected by any dismissal of this case. The plaintiff First Hartford Corporation Pension Plan & Trust ("First Hartford" or the "Plaintiff") responded to the Motion to Dismiss on September 24, 2002, indicating that it also had no objection to the Motion to Dismiss and further asserting that the Government's Motion for Sanctions was groundless. The FDIC filed its final reply on October 4, 2002. Oral argument is deemed unnecessary.

For the reasons set forth herein, the Motion to Dismiss is GRANTED and the Plaintiff's Complaint is to be DISMISSED. Further, the Plaintiff's Joint Motion for Leave to File First Amended Complaint and to Substitute Paul E. Taylor as Derivative Plaintiff is DENIED and the Defendant's Motion for Sanctions is DENIED. All other pending motions, including First Hartford's Motion to Withdraw, are DENIED as moot.

### Background

The initial Complaint in this case was filed by First Hartford on December 20, 1996, one day before the statute of limitations was set to expire on its claims. First Hartford, a shareholder of Dollar Dry Dock Bank of New York ("Dollar Dry Dock") at the time of the initial filing, sought damages for an alleged breach of contractual obligations (or, in the alternative, a Fifth Amendment taking) in connection with a financial assistance agreement between Dollar Dry Dock and the FDIC.[1] First Hartford purported to sue derivatively on behalf of Dollar Dry Dock and directly on behalf of itself and a similarly situated class of shareholders. In connection with its derivative claim, First Hartford asserted that it would "fully and adequately represent the interests of all other shareholders of Dollar Dry Dock similarly situated in enforcing the rights of Dollar Dry Dock." (Compl.¶ 7.)

This Court dismissed all of First Hartford's claims on November 20, 1998. *See First Hartford Corp. Pension Plan & Trust v. United States,* 42 Fed.Cl. 599 (1998). On appeal, the United States Court of Appeals for the Federal Circuit (the "Federal Circuit") affirmed in part, reversed in part, and remanded, holding that (1) First Hartford could not pursue a direct breach of contract claim against the FDIC, but that (2) First Hartford had standing to pursue its derivative contract claims on behalf of itself and other similarly situated shareholders of Dollar Dry Dock, and (3) First Hartford had standing to pursue a takings claim for any potential liquidation surplus of Dollar Dry Dock. *See First Hartford Corp. Pension Plan & Trust v. United States,* 194 F.3d 1279 (Fed.Cir.1999). Only the remanded claims remain before this Court.

On November 3, 2000, First Hartford filed Plaintiff's Motion and Memorandum to Join FDIC in Its Capacity as Successor in Interest to Dollar Dry Dock Bank of New York in this action, pursuant to Rule of the United States Court of Federal Claims ("RCFC") 19. On November 14, 2000, the FDIC filed a Consent of FDIC to Appear as an Involuntary Plaintiff in this matter. In its Consent, the FDIC agreed to be joined and to appear as an involuntary plaintiff on the grounds that it was the owner of Dollar Dry Dock's goodwill claims, and, therefore, "a necessary, if not indispensable, party" to this action. (Consent of FDIC to Appear as Involuntary Plaintiff 3 (Nov. 14, 2000).) Over the Defendant's objections, the Court joined the FDIC, pursuant to RCFC 19, on January 26, 2001. *See First Hartford Corporate Pension Plan & Trust v. United States,* 50 Fed.Cl. 1 (2001).

The Defendant filed a Motion for Judgment on the Pleadings on February 1, 2001, asserting that the nonappropriated funds doctrine served as a jurisdictional bar to this Court's authority to entertain the Plaintiff's Complaint and that the FDIC lacked the authority to enter into a contract that could give rise to money damages against the United States. This issue was fully briefed, but

---

1. Dollar Dry Dock was a New York-chartered savings bank, created in 1983 by the merger of two financial troubled savings banks. It was seized on February 12, 1992, by the New York State Superintendent of Banks, and the FDIC was appointed as receiver.

the Motion was stayed pending the resolution of several other issues in this case. *See infra* 4–9.

On June 13, 2001, First Hartford filed a Motion to Withdraw from this case, citing its lack of financial resources to continue financing this litigation and asserting that the FDIC's involvement as an involuntary plaintiff would be sufficient to protect the interests of the shareholders of Dollar Dry Dock. However, because the FDIC had not yet filed a Complaint in this matter and was only serving as a nominal plaintiff at the behest of the Court, this Court stayed First Hartford's Motion to Withdraw, pending the FDIC's decision whether or not to file a Complaint in this case. *See First Hartford Corp. Pension Plan & Trust,* No. 96–801C (Fed.Cl. Oct. 18, 2001).

Immediately prior to First Hartford filing its Motion to Withdraw, counsel for the Plaintiff had become aware of a serious defect in his client's ability to pursue its derivative contract and taking claims before this Court. In connection with the settlement of an unrelated action, First Hartford had ceased to be a shareholder of Dollar Dry Dock as early as November 10, 1998 (before First Hartford had filed its appeal of this Court's November 20, 1998 decision to the Federal Circuit). First Hartford's failure to notify this Court of the change in its status as a shareholder of Dollar Dry Dock caused the Defendant to file a Motion for Sanctions against counsel for First Hartford on August 31, 2001. The Defendant claimed that counsel had signed and filed Court papers containing material statements of fact that were not true, without having made reasonable inquiry to ensure that such papers were well grounded in fact. The Plaintiff opposed the Motion for Sanctions, asserting that counsel had no reason to know of the change in First Hartford's status, and, had counsel known, disclosure would have had no effect on the litigation.

In communications with the Defendant related to the Motion for Sanctions, counsel for the Plaintiff further learned that First Hartford had been terminated and liquidated by the unrelated litigation. In an effort to remedy the defects in First Hartford's standing, First Hartford and Paul E. Taylor ("Taylor"), a shareholder of Dollar Dry Dock, filed a Joint Motion for Leave to File First Amended Complaint and to Substitute Taylor as Derivative Plaintiff (the "Joint Motion to Substitute Derivative Plaintiff") on October 10, 2001. Both the FDIC and the Defendant opposed the Joint Motion to Substitute Derivative Plaintiff. This Motion subsequently was stayed pending the search for a proper derivative plaintiff. *See infra* 6–9; *First Hartford Corp. Pension Plan & Trust,* No. 96–801C (Fed.Cl. Jan. 16, 2002).

On December 5, 2001, the FDIC notified this Court that it did not intend to file a Complaint in this matter. The FDIC represented that pursuing the claims asserted by First Hartford was not likely to prove cost effective.

On the same date, the FDIC filed a motion to give notice to the remaining shareholders of Dollar Dry Dock that First Hartford had moved to withdraw and that the FDIC had opted not to file a Complaint in this matter ("Motion to Give Notice").[2] Neither party objected to the Motion to Give Notice. The Court held a status conference on January 11, 2002, to discuss the Motion to Give Notice and give all parties the opportunity to comment on the details of such notice. As a result of this conference, the Court ordered the FDIC to amend the notice in several respects and required the FDIC to file its amended notice prior to mailing. *See First Hartford Corp. Pension Plan & Trust,* No. 96–801C (Fed.Cl. Jan. 16, 2002).

In accordance with this Order, on January 25, 2002, the FDIC filed an Amended Motion to Give Notice to Shareholders of Dollar Dry Dock Bank of New York. On January 30, 2002, this Court found the amended notice

---

**2.** RCFC and Federal Rule of Civil Procedure 23.1 provide that a derivative suit shall not be dismissed without the approval of this Court and notice to the shareholders. *See infra* 9–10. Because the withdrawal of First Hartford and the FDIC's refusal to file a Complaint would leave no

viable and willing plaintiff in this matter, and thus result in the dismissal of the Complaint, the Motion to Give Notice argued that it was necessary for this Court to provide the shareholders notice of the possibility of a pending dismissal.

adequate under the terms of Rule 23.1 of the Federal Rules of Civil Procedure (the "Federal Rules"),[3] required the FDIC to make further minor amendments to the notice, and ordered the FDIC to mail such amended notice to the shareholders of Dollar Dry Dock within ten days of the date of the Order. *See First Hartford Corp. Pension Plan & Trust,* No. 96–801C (Fed.Cl. Jan. 30, 2002). Thus, on February 1, 2002, the FDIC mailed the amended notices to ninety-six addresses, via first-class registered mail, return receipt requested.[4]

On April 22, 2002, the FDIC filed a Report on the Mailing to Shareholders with this Court. In this report, the FDIC stated that forty of the ninety-six addressees had returned a green card receipt, indicating that they had received the notice. The FDIC further represented that forty-six notices were returned to the FDIC as undeliverable.[5] Further research by the FDIC found eight of the returned notices to be duplicative, leaving thirty-eight nonduplicative undelivered notices. The FDIC managed to locate new addresses for thirty-five out of the thirty-eight undelivered notices.[6]

The FDIC was ordered to mail the amended notice to the thirty-five shareholders listed in the FDIC's report. Shareholders receiving this second mailing were given 30 days from the date of the mailing to file with this Court a formal motion to substitute as party plaintiff in place of First Hartford. The FDIC was further ordered to file a final report on the notice mailings with this Court within 30 days of the second mailing.

In compliance with this Court's Order, the FDIC made a follow-up mailing to thirty-five shareholders. The FDIC also re-sent notice to one of the shareholders whose envelope had been returned as undeliverable at the original address, on the chance that a second mailing might produce a different result. The FDIC also sent notice to one shareholder whose first notice was returned as undeliverable after the date of the report. In summary, second notices were sent to a total of thirty-seven shareholders,[7] at forty-eight different addresses.[8]

On July 17, 2002, the FDIC filed its Report on the Second Mailing to the Shareholders. In this Report, the FDIC stated that it had received twenty-six more green cards from shareholders as a result of the second mailing. Ten notices were neither returned nor acknowledged. Only twelve of the forty-eight notices sent out in the second mailing were returned as undeliverable. Seven individual shareholders are represented solely by returned envelopes and thus may not have received notice.

As a result of the notice, no shareholder has stepped forward to volunteer to continue to pursue this derivative suit on behalf of Dollar Dry Dock. Accordingly, the FDIC filed its Motion to Dismiss on August 9, 2002. The Defendant responded to the Motion to Dismiss on August 26, 2002, indicating that it had no objection to the Motion to Dismiss and further noting that its pending Motion for Sanctions should not be affected by any dismissal of this case. First Hartford responded to the Motion to Dismiss on September 24, 2002, indicating that it also had no objection to the Motion to Dismiss and further asserting that the Government's Motion for Sanctions was groundless. The FDIC filed its final reply on October 4, 2002.

*Discussion*

A. Motion to Dismiss

■ RCFC 23.1 provides that a derivative suit

---

3. RCFC 23.1 was not made effective until after the date of the Amended Motion, so this Court used Federal Rule 23.1 for guidance on how to manage a derivative suit.

4. While there were 115 entries on the shareholder list, many of these addresses were duplicative. When the FDIC noticed such duplication, only one notice was sent to a given address.

5. The FDIC has indicated that it subsequently received one additional green card and one additional envelope, for a total of forty-one green cards and forty-seven returns on the first mailing.

6. Three addressees were known to have died, and the FDIC found a possible successor for only one of the deceased addressees.

7. The two shareholders that the FDIC did not send a second notice to were known to have died, and no successor could be located.

8. In some cases, more than one new address had been located for a shareholder.

shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs.

RCFC 23.1. *See also* FED. R. CIV. P. 23.1 (identical language to RCFC 23.1).[9] This Court will not merely rubber stamp a proposed dismissal of a derivative action, even if all the parties before this Court agree to such dismissal. Instead, this Court must undertake its own independent review of the dismissal to ensure that the interests of the shareholders not directly involved in the action are protected. *See Seigal v. Merrick,* 590 F.2d 35, 37–38 (2nd Cir.1978); *Greenspun v. Bogan,* 492 F.2d 375, 378 (1st Cir. 1974).

The notice requirement is an essential part of protecting the corporation and the shareholders' interests in the litigation. This is particularly the case where the statute of limitations likely would bar the initiation of a new action. *See* 7C WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 1839 at 177 (2nd ed.1986). Such notice may be given in many different forms, and the adequacy of the notice will depend upon the facts and circumstances of each case. However,

> [n]otice by mail is, in most cases, the best form of notice. Notice of dismissal or compromise by mail need not be supplemented by notice by publication, even though all beneficial owners of stock may not be ascertainable from stock records. Furthermore, mailing the notice to registered shareholders is sufficient even though it does not reach those who have disposed of their stock.

19 AM. JUR. 2D *Corporations* § 2450 (1985) (footnotes omitted). *See also Lewis v. Anderson,* 81 F.R.D. 436, 441 n. 5 (S.D.N.Y. 1978) (mailing of notice to all record holders without publication is sufficient under Federal Rule 23.1); *Boggess v. Hogan,* 410 F.Supp. 433, 442 (N.D.Ill.1975), *opinion supplemented,* 410 F.Supp. 443 (1976).

■ This Court finds the notice provided by the FDIC to be adequate under the circumstances. The FDIC twice attempted to mail notices to shareholders of record, using both original and updated addresses. Only seven shareholders are known to have not received actual notice of the pendency of this lawsuit. Moreover, prior to the FDIC's mailing, First Hartford has represented to the Court that it actively sought to find a shareholder to replace it in this action. Finally, this Court notes that the *Winstar*-related cases have received much publicity since their inception. The shareholders of Dollar Dry Dock have had over a decade to express an interest in this matter. None, except for First Hartford, has done so.

This lack of interest is not entirely surprising, because any recovery would be distributed first to creditors of the Dollar Dry Dock receivership. As of December 31, 2000, the receivership had a deficit of more than $560 million, including more than $200 million in interest owed to creditors and a federal income tax liability of approximately $10.5 million. The interest on such claims would continue to increase during this litigation. Thus, any recovery in this case would need to be in excess of at least $500 million before any stockholders of Dollar Dry Dock would receive any benefit or recovery.

Moreover, there appear to be several credible arguments for the dismissal of this action on the merits. It is far from certain that *any* recovery is possible. Faced with such difficulties, two potential plaintiffs have indicated that they either do not have the financial resources to pursue this matter, or that this litigation would not be "cost effective." Any incoming derivative plaintiff would have to take on the substantial burden of litigating the numerous issues in this case, with an uncertain chance of obtaining any recovery for itself, or for any of the other shareholders.

Finally, in lieu of a willing party plaintiff, this Court cannot and will not preserve this action against the United States. All parties

---

9. RCFC 23.1 became effective with the May 1, 2002 revision of this Court's Rules. Thus, there is very little case law on this provision. This Court is comfortable, however, in looking to cases involving Federal Rule 23.1, which contains identical language to RCFC 23.1, to assist in its interpretation of RCFC 23.1.

directly before the Court have consented to dismissal, and those shareholders with a potential interest in this matter have chosen not to pursue this action. *See* RCFC 41 (providing for the dismissal on an action). If there is no person or entity that is willing and able to step forward and pursue the potential claims of Dollar Dry Dock, this Court will not keep this litigation alive. One of the most fundamental limitations on a federal court's jurisdiction is the requirement that there be an actual "case or controversy" within the meaning of Article III of the U.S. Constitution.[10] *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 37, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). Where there is no willing and able plaintiff, there is no case or controversy. *See Lusardi v. Xerox Corp.*, 975 F.2d 964, 974 (3d Cir.1992) (citing *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1041 (5th Cir.1981)).

Accordingly, and for the foregoing reasons, the FDIC's Motion to Dismiss must be granted, and this Complaint is to be dismissed.

**B. Joint Motion to Substitute Derivative Plaintiff**

In granting the Motion to Dismiss, this Court notes that the Plaintiff's Joint Motion to Substitute Derivative Plaintiff never offered this Court a proper derivative plaintiff and, therefore, must be denied. Indeed, the Plaintiff has characterized the Joint Motion as an interim step, designed to remedy a potential jurisdictional defect that arose over questions regarding First Hartford's ownership of the Dollar Dry Dock stock. The Joint Motion was not intended to provide this matter with a derivative plaintiff that would fully pursue Dollar Dry Dock's claims. *See First Hartford Corp. Pension Plan & Trust*, No. 96–801C, Hearing Transcript at 5–7 (Fed.Cl. Jan. 11, 2002).

■ RCFC 23.1 provides that a "derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated

in enforcing the rights of the corporation or association." RCFC 23.1. *See also* FED. R. CIV. P. 23.1. Such a limitation recognizes that a derivative plaintiff must take on a special responsibility upon initiating an action before the Court. While the typical plaintiff represents its interests alone, a derivative plaintiff is seeking to enforce a right held by the corporation and, as such, has a fiduciary duty to both the corporation and any similarly situated shareholders. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The failure to pursue an action may be sufficient grounds for dismissing an individual as a derivative plaintiff. *See Cohen v. Bloch*, 507 F.Supp. 321, 324–25 (S.D.N.Y. 1980); *Berman v. Thomson*, 403 F.Supp. 695, 697–98 (N.D.Ill.1975).

■ In contrast to First Hartford, Taylor had not pledged to "fully and adequately represent" the interests of all other similarly situated shareholders of Dollar Dry Dock. Taylor had sworn only that he will *"protect and preserve* the interests of all other shareholders of Dollar Dry Dock similarly situated in enforcing the rights of Dollar Dry Dock." (Joint Mot. of First Hartford & Taylor for Leave to File First Am. Compl. & Substitute Pl. at Ex. 1, ¶ 7 (emphasis added).) First Hartford and Taylor made clear that Taylor did "not presently intend to pursue this litigation." *(Id.* at 3.) *See also First Hartford Corp. Pension Plan & Trust*, No. 96–801C, Hearing Transcript at 5–6 (Fed.Cl. Jan. 11, 2002). All that Taylor wished to do was to "lend [his] name to the lawsuit at this time as a substitute nominal plaintiff for First Hartford Pension Plan and Trust," in order to cure an alleged procedural defect. (Resp. to FDIC's and Def.'s Opp'n to Mot. to Substitute Pl. at 4.) Such a limited and constrained commitment is not enough to qualify Taylor as a proper derivative plaintiff before this Court.

Because Taylor is not a proper derivative plaintiff, the Joint Motion to Substitute Derivative Plaintiff would have subjected the

---

10. Although this Court is not an Article III court, the "case or controversy" requirement of Article III is still applicable. *See Freytag v. Commission-*

*er,* 501 U.S. 868, 889, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991).

amended complaint to immediate dismissal. "Leave to amend need not be given if a complaint, as amended, is subject to dismissal." *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 538 (9th Cir.1989) (citing *Pan–Islamic Trade Corp. v. Exxon Corp.,* 632 F.2d 539, 546 (5th Cir.1980), *cert. denied,* 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981)). Moreover, by not objecting to the Motion to Dismiss, First Hartford has effectively abandoned its prior Joint Motion to Substitute Derivative Plaintiff, consistent with its representations before this Court that such Motion was viewed as an interim measure. Thus, this Court will not grant leave to amend and substitute, and the Motion is to be denied.

## C. Motion for Sanctions

 RCFC 11 provides,[11] in pertinent part:

(b) **Representations to Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, *an attorney* or unrepresented party *is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,*

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) *the allegations and other factual contentions have evidentiary support* or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(c) **Sanctions.** If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, *the court may, \* \* \* \* impose an appropriate sanction* upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

RCFC 11 (emphasis added). Rule 11 sanctions against an attorney may be appropriate when this Court has been presented with a pleading or paper filed for any improper purpose, frivolous legal claims or contentions, or factual allegations or denials that are not supported or reasonably warranted by the evidence, based on the attorney's knowledge, information, and belief after reasonable inquiry. *See Spencer v. Cohen,* 886 F.Supp. 235 (N.D.N.Y.1995). An attorney's duty to make reasonable inquiry into the facts continues during the pendency of the action and is not limited to the initial filings. *See Payne v. Fontenot,* 925 F.Supp. 414 (M.D.La.1995).

The Defendant does not assert that counsel for the Plaintiff misrepresented the status of First Hartford at the time that the initial Complaint was filed. The Defendant does not even claim that counsel for the Plaintiff had actual knowledge that First Hartford had sold its stock in Dollar Dry Dock in November of 1998. Rather, the Defendant only asserts that counsel failed to make a reasonable inquiry into the status of First Hartford after receiving information of the settlement of an unrelated action.

 While the failure to make reasonable inquiry may be sanctionable conduct, in the present case, this Court finds that counsel for the Plaintiff had no reason to suspect that an apparently unrelated transaction involving First Hartford would have resulted in the sale of First Hartford's stock in Dollar Dry Dock or the termination of First Hartford,

**11.** RCFC 11 was changed, effective May 1, 2002, in several respects while the Defendant's Motion for Sanctions was pending. The new revised Rules govern all proceedings in actions pending before this Court, except to the extent that this Court views their application as infeasible or working an injustice. Because this Court finds that the application of the new Rule is neither infeasible nor unjust, this Court will apply RCFC 11 as revised.

and, thus, counsel had no duty to make a reasonable inquiry into the details of such transaction. At no time did counsel act in a negligent manner or neglect his duties toward this Court.

Moreover, this Court notes that the substantive claims at issue in this case are in no way affected by First Hartford's standing difficulties. First Hartford brought most of its claims on behalf of Dollar Dry Dock, and First Hartford is not charged with failing to make a reasonable inquiry into the facts and circumstances surrounding the Dollar Dry Dock transaction.

The Advisory Committee note to Federal Rule 11 warns against "using the wisdom of hindsight" in determining whether sanctions are warranted. This Court does not require counsel to be omniscient, it merely requires reasonable diligence. Counsel for the Plaintiff has unwittingly erred but has shown reasonable diligence. The Defendant's Motion for Sanctions is denied.

### CONCLUSION

The FDIC's Motion to Dismiss this Matter with Prejudice, filed August 9, 2002, is GRANTED, and the Plaintiff's Complaint will be DISMISSED with prejudice. Further, the Plaintiff's Joint Motion for Leave to File First Amended Complaint and to Substitute Paul E. Taylor as Derivative Plaintiff, filed October 10, 2001, is DENIED, and the Defendant's Motion for Sanctions, filed August 31, 2001, is DENIED. All other pending motions (including First Hartford's Motion to Withdraw, filed on June 13, 2001) are DISMISSED as moot. The Clerk of the Court is directed to enter judgment accordingly.

Each party is to bear its own costs.