# United States Court of Federal Claims

No. 13-592 C

October 4, 2013

---

**BROOKFIELD RELOCATION INC.,**

**_Plaintiff,_**

**v.**

**UNITED STATES OF AMERICA,**

**_Defendant._**

Pre-award bid protest; Subject-matter jurisdiction; Ripeness; Standing; Mootness

---

*Seamus Curley*, DLA Piper US LLP (DC), Washington, DC, for plaintiff.

*Devon A. Wolak*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**_Block, Judge._**

This bid protest concerns a procurement conducted by the Federal Bureau of Investigation ("FBI") for relocation services. It is directly related to two consolidated bid protests currently before the court on motions for judgment on the administrative record, *WHR Group, Inc. v. United States*, 13-cv-515, and *Lexicon Gov't Services, LLC v. United States*, 13-cv-545.

The basic facts underlying the dispute at the center of these cases are as follows. Presently, the FBI procures relocation services from plaintiff under an expired task order. Earlier this year, the FBI awarded three Blanket Purchase Agreements ("BPAs") to plaintiff's competitors, WHR Group, Inc. ("WHR"), Lexicon Government Services, LLC ("Lexicon"), and Franconia Real Estate Services d/b/a Allegiance Relocation Services ("Allegiance"). These three firms were the lowest-priced technically acceptable offerors. Plaintiff protested the awards before the Government Accountability Office ("GAO"). The FBI then granted plaintiff a fourth BPA, despite plaintiff being the sixth lowest-priced technically acceptable offeror. When two other offerors, Capital Relocation Services, LLC, and TRC Global Solutions, Inc., filed GAO protests challenging the award to plaintiff, the FBI decided to cancel all four BPAs and conduct the procurement anew under a revised solicitation.

Thereafter, WHR and Lexicon filed protests in this court challenging this "corrective action." Plaintiff intervened in those protests. At this time the court is considering whether to permanently enjoin the FBI from (1) cancelling the BPAs, (2) conducting a new procurement,

and (3) continuing to procure relocation services from plaintiff under the expired task order. Throughout the *WHR* and *Lexicon* protests, plaintiff in this matter and defendant have contended that the FBI's chosen corrective action is reasonable and proper and should be sustained by the court.

Despite its apparent agreement with defendant's position, plaintiff filed the instant bid protest challenging the award of BPAs to WHR, Lexicon, and Allegiance. In its complaint, plaintiff contends that the FBI's evaluation of WHR's, Lexicon's, and Allegiance's proposals was arbitrary and capricious on a number of grounds. Effectively, plaintiff seeks injunctive relief requiring the FBI to take the corrective action it has already decided to take. Specifically, plaintiff is asking the court to enjoin the FBI from procuring relocations services through the BPAs awarded to WHR, Lexicon, and Allegiance. At the same time, the FBI has announced that it will not procure relocation services through those BPAs, and will instead conduct a new procurement for its relocation services. Indeed, the FBI is currently defending its decision to take this corrective action in the *WHR* and *Lexicon* cases, in which plaintiff supports defendant as a defendant-intervenor.

Concerned that there may not exist a genuine case or controversy for it to adjudicate, the court *sua sponte* ordered plaintiff to show cause that subject-matter jurisdiction exists. In its response, plaintiff contends that there exists a genuine dispute ripe for adjudication in which plaintiff has standing. Defendant disagrees, arguing the agreement between the parties that the FBI's corrective action should stand deprives the court of a justiciable case or controversy. For the reasons stated herein, the court agrees with defendant that it lacks subject-matter jurisdiction.

Under Article III of the Constitution, the "judicial Power of the United States" is vested in courts empowered to decide certain "Cases" and "Controversies." U.S. Const. Art. III. These terms, though not defined in the Constitution itself, refer to the "common understanding of what activities are appropriate . . . to courts." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Historically, this has meant that courts do not answer abstract legal questions; rather they adjudicate concrete disputes involving at least two parties with opposing interests. As the Supreme Court explained in *Flast v. Cohen*, the case or controversy requirement serves a "dual function." 392 U.S. 83, 95 (1968). First, the requirement "limit[s] the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." *Id.* Second, the case or controversy requirement "define[s] the role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of government." *Id.* "Justiciability is the term of art employed to give expression to this dual limitation placed upon federal courts by the case-and-controversy doctrine." *Id.*

The Court of Federal Claims, of course, is not an Article III court. *Anderson v. United States*, 344 F.3d 1343, 1350 n.11 (Fed. Cir. 2003); *Kanemoto v. Reno*, 41 F.3d 641, 644 (Fed. Cir. 1994); *cf. Williams v. United States*, 289 U.S. 553, 567-81 (1933). Nevertheless, it is well-settled that Congress has made the various "justiciablilty" doctrines of Article III applicable to this court. *Anderson*, 344 F.3d at 1350 n.11; *Glass v. United States*, 258 F.3d 1349, 1355 (Fed. Cir. 2001). To be sure, Congress has provided by statute that the final judgments of this court have binding, conclusive effect in the "case[s]" and "controvers[ies]" within this court's jurisdiction. 28 U.S.C. § 2519. In short, "[a]lthough this [c]ourt is not an Article III court, the 'case or controversy' requirement of Article III is still applicable." *First Hartford Corporate*

*Pension Plan & Trust v. United States*, 54 Fed. Cl. 298, 304 n.10 (2002) (citing *Freytag v. Comm'r*, 501 U.S. 868, 889 (1991)).

A basic aspect of the requirement of justiciability is that a case or controversy must involve parties that are "adverse." *See Richardson v. Ramirez*, 418 U.S. 24, 36 (1974) ("[W]e are limited by the case-or-controversy requirement of Art. III to adjudication of actual disputes between adverse parties."). The need for "adverse" parties is a requirement that the parties have opposing interests—that they disagree about who should be entitled to a sum of money, or about whether a defendant should be enjoined from taking a certain action affecting the plaintiff, or about whether a criminal defendant should have his conviction overturned. Something real must be at stake, and the parties' interests with respect to that real thing must be antagonistic. *See Chicago & Grand Trunk R. Co. v. Wellman*, 143 U.S. 339, 344-45 (1982).

The Supreme Court gave its classic elucidation of the requirement of adversity in *Welman*:

> Whenever, in pursuance of an honest and actual antagonistic assertion of rights by one individual against another, there is presented a question involving the validity of any act of any legislature, state or federal, and the decision necessarily rests on the competency of the legislature to so enact, the court must, in the exercise of its solemn duties, determine whether the act be constitutional or not; but such an exercise of power is the ultimate and supreme function of courts. *It is only in the last resort, and as a necessity in the determination of real, earnest, and vital controversy between individuals. It never was the thought that, by means of a friendly suit, a party beaten in the legislature could transfer to the courts an inquiry as to the constitutionality of the legislative act.*

*Id.* at 345 (emphasis added). Since *Welman*, the Supreme Court has applied the principle that federal courts may not adjudicate disputes where the parties have the same interests in the context of declaratory judgments. *See Poe v. Ullman*, 367 U.S. 497, 506 (1961) ("The Court has been on the alert against use of the declaratory judgment device for avoiding the rigorous insistence on exigent adversity as a condition for evoking Court jurisdiction."). For instance, in *C.I.O. v. McAdory*, 325 U.S. 472 (1945), the petitioners sought to enjoin enforcement of two sections of an Alabama statute. The respondent had agreed not to enforce one of those sections so long as another case challenging the validity of that section was pending. The Court held that the petitioners and the respondent were not adverse as to that section and further held that "[t]he Court will not pass upon the constitutionality of legislation in a suit which is not adversary or in which there is no actual antagonistic assertion of rights." *Id.* at 475 (internal citations omitted).

Although here there is no challenge to the constitutionality of legislation, the principle of *McAdory*, *Ullman*, and *Welman*, applies. Because plaintiff and defendant agree with one another that the awards to WHR, Lexicon, and Allegiance are invalid and should be set aside, that issue does not present a justiciable case or controversy between them. Defendant seeks to do the very thing plaintiff requests: cancel the awards to WHR, Lexicon, and Allegiance, and conduct a new procurement under a revised solicitation. The only reason defendant has not already taken this action is the pendency of the *WHR* and *Lexicon* suits, in which plaintiff and defendant are on the same side. Accordingly, plaintiff and defendant are not truly adverse parties. For that reason, there is no justiciable case or controversy.

Moreover, even granting that there was adversity between plaintiff and defendant before defendant proposed taking corrective action, that proposed corrective action renders any case or controversy moot. "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the come.'" *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (*per curiam*)). When the awards to WHR, Lexicon, and Allegiance were initially made, there were certainly "live" issues between plaintiff and defendant, as evidenced by the GAO protest plaintiff filed, *supra* at 1, challenging those awards. But those live issues were mooted when defendant sought to do exactly as plaintiff wanted and conduct a new procurement.

It is true, of course, that a defendant cannot ordinarily moot a case or controversy simply by promising to cease the challenged conduct. *Id.* at 726. Instead, a defendant must show that that conduct is not likely to reoccur. *Id.* Defendant has made that showing here. It would make no sense for defendant to issue the revised solicitation on August 5 if it planned to treat WHR's, Lexicon's, and Allegiance's BPAs as validly awarded. The only reason defendant did not proceed to conduct a new procurement under that revised solicitation was that this court temporarily enjoined defendant from doing so on August 12. The court is therefore persuaded that the only circumstance under which defendant would treat the WHR, Lexicon, and Allegiance BPAs as valid is if the court, in the *WHR* and *Lexicon* cases, permanently enjoins defendant from cancelling them.

Additionally, any dispute that does exist between plaintiff and defendant is not ripe for judicial resolution. As with other justiciability doctrines, "the Court of Federal Claims must address ripeness as a 'threshold consideration' before addressing the merits." *Casitas Mun. Water Dist. v. United States*, 708 F.3d 1340, 1351-52 (quoting *Palazzolo v. Rhode Island*, 533 U.S. 606, 618 (2001)). Ripeness depends on two factors: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967). "When a party challenges government action, the first factor becomes a question of whether the challenged conduct constitutes a final agency action." *Systems Application & Technologies, Inc. v. United States*, 691 F.3d 1374, 1384 (Fed. Cir. 2012) (citing *Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1363 (Fed. Cir. 2008); *U.S. Ass'n of Imps. of Textiles & Apparel v. U.S. Dep't of Commerce*, 413 F.3d 1344, 1349-50 (Fed. Cir. 2005)). "As a general matter, two conditions must be satisfied for an agency action to be 'final': First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotation marks and citations omitted).

As to the fitness of the "dispute" between the parties for judicial resolution, it is clear that plaintiff's protest challenges entirely speculative government conduct. Plaintiff acknowledges that defendant "has made multiple indications in the procurement record and during the related protest proceedings that it does not intend to move forward with performance under the invalid WHR, Lexicon, and Allegiance BPAs," but nevertheless contends that "there are counter-indicia in the record that . . . constitute concrete steps towards the Agency's use of the BPAs, which could be construed as an endorsement—albeit one that is inconsistent with the record—of their validity." Pl.'s Response to Order to Show Cause, ECF Dkt. 21, at 7-8. But ripeness does not

hinge on whether there have been "counter-indicia," inconsistent with the government's own representations, that "could be construed" as endorsing the challenged conduct. Rather, ripeness hinges on the existence of a "final agency action" that is neither "tentative" nor "interlocutory," but "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett*, 520 U.S. at 177-78. That "final agency action" is the only "concrete step" that will satisfy the "fitness" prong of the ripeness doctrine. Here, plaintiff has failed to show that defendant has determined to accept the validity of the WHR, Lexicon, and Allegiance BPAs. And given that defendant is currently defending its decision to cancel those BPAs and conduct a new procurement, it is unreasonable to suppose that such a final agency action has taken place.

Nor does the hardship prong favor a finding of ripeness. The issues presented by this protest are precisely the issues being adjudicated in the *WHR* and *Lexicon* protests. The only difference is that WHR and Lexicon, unlike plaintiff, actually disagree with defendant's position on the validity of their BPAs and the propriety of the corrective action. There is no reason why plaintiff, as intervenor-defendant in those cases, cannot argue that the BPAs are invalid and the corrective action is justified—in fact, plaintiff, as defendant-intervenor, has argued just that.

Finally, the lack of ripeness illustrates that, as of yet, plaintiff has not suffered an injury sufficient to give it standing. Article III standing requires a plaintiff to show (1) a "concrete and particularized," as well as "actual or imminent," injury in fact, (2) that the injury is "fairly traceable" to the challenged government conduct, and (3) that the injury is "like" to be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560 (1992). In the context of a post-award bid protest, the injury an actual or prospective bidder must show is that the agency action has deprived the bidder of a "substantial chance" to win the award. *Orion Technology, Inc. v. United States*, 704 F.3d 1344, 1348 (Fed. Cir. 2013) (citing *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1308 (Fed. Cir. 2006)). Here, defendant is currently defending a proposed corrective action that would cancel awards to plaintiff's competitors and invite a new procurement in accordance with plaintiff's wishes. Since plaintiff's injury is entirely contingent upon defendant losing in the *WHR* and *Lexicon* protests, it is not possible to conclude that plaintiff has currently suffered the injury requisite for standing.

In short, the court concludes that plaintiff's protest fails to meet the standards for several justiciability doctrines. First, the parties are not truly "adverse." Second, whatever adversity may have once existed, it has been rendered "moot" by defendant's proposed corrective action. Third, to the extent any dispute exists between the parties, it is not "ripe" for adjudication. Fourth, and finally, because plaintiff's asserted injury has not come to fruition, plaintiff has no standing to maintain this protest.

In conclusion, for the foregoing reasons, plaintiff's protest is **DISMISSED**, without prejudice, for lack of subject-matter jurisdiction. The Clerk is directed to take the necessary steps to dismiss this matter.

**IT IS SO ORDERED.**


*s/ Lawrence J. Block*

Lawrence J. Block
Judge